**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Andrew COLBERT and Michael
Beryl Reese, Defendants-Appellants.**

**No. 71-2097.**

United States Court of Appeals,
Fifth Circuit.

Feb. 14, 1973.

John R. Brown, Chief Judge, joined by Coleman, Simpson, Clark, Ingraham, and Roney, Circuit Judges, filed concurring opinion.

Goldberg, Circuit Judge, filed dissenting opinion.

Jack Drake, Drake & Knowles, University, Ala., for defendants-appellants.

Wayman G. Sherrer, U. S. Atty., L. Scott Atkins, John S. Salter, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, TUTTLE, Senior Circuit Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

THORNBERRY Circuit Judge:

Appellants Colbert and Reese were convicted in the district court of possession of unregistered sawed-off shotguns in violation of 26 U.S.C.A. § 5861(d). A panel of this court overturned the convictions on appeal holding the police searches which produced the weapons invalid under the Fourth Amendment.[1] Having agreed to rehear this case en banc, we vacate the judgment of the panel and affirm the convictions.

The panel opinion set out the facts fully, and we repeat here only a somewhat abbreviated version. In the late afternoon of October 24, 1970, appellants Colbert and Reese were walking down a street in Birmingham, Alabama, carrying briefcases. Noticing that Colbert fit the description of a wanted suspected felon, officers Trimm and Pitts of the Birmingham police department approached appellants to question them. At the officers' approach appellants set their briefcases on the sidewalk. They identified themselves as book salesmen but, when the officers asked to see their wares, i. e. the contents of the briefcases, appellants replied they did not have to show the officers anything and denied that they owned the briefcases or had any knowledge about them. The officers frisked Colbert and Reese. Appellants then began to walk away from the officers, leaving the briefcases on the sidewalk. The officers stopped them again and demanded of each to see some identification document. Reese produced a Georgia driver's license, and Colbert said he had no identification card with him. The officers then asked each appellant to produce his draft card; when each denied possessing one, the officers arrested them for failure to carry a Selective Service registration certificate, a violation of 50 U.S.C.A.App. § 462, and placed them in the patrol car. While in the patrol car Reese again denied knowing anything about the briefcases. One of the officers then returned to the briefcases, opened them, and found the sawed-off shotguns inside. Appellants were eventually indicted for possession of the unregistered shotguns with illegal barrel lengths, and, after the trial judge denied their motion to suppress the weapons, they were convicted upon a jury verdict of guilty.

Of the four issues raised on this appeal, three concern the searches which produced the sawed-off shotguns: First, were the searches incident to a valid arrest under Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685? Secondly, are the searches sustainable under the so-called "automobile exception" to the warrant requirement of the Fourth

1. United States v. Colbert, 5th Cir. 1972, 454 F.2d 801.

Amendment applied in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543?[2] Thirdly, did appellants, by abandoning their briefcases, lose standing to object to the searches? The fourth issue is whether police officers were required by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 to warn appellants of their rights before asking to see their draft cards.

The panel majority found the searches could not be sustained under the first and second theories argued by the government but did not comment on the abandonment theory; since it reversed on the search issue, the panel had no need to discuss the asserted *Miranda* problem. We predicate our affirmance on the abandonment theory only and intimate no view as to the two arguments treated in the panel opinion. Under our view of this case we are not required to reach the *Miranda* issue to dispose of this appeal.

I. Standing to Object to Search and Seizure

■■ Only those persons whose privacy is invaded by a search have standing to object to it under the exclusionary rule codified in Rule 41(e), Fed. R.Crim.P.[3]:

In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.

Jones v. United States, 1960, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697.

Further, it is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned. *See, e. g.*, Abel v. United States, 1960, 362 U.S. 217, 240–241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668, 687; Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Parman v. United States, 1968, 130 U.S.App.D.C. 188, 399 F.2d 559, cert. denied 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126; Coleman v. Maxwell, 6th Cir. 1968, 387 F.2d 134, cert. denied 393 U.S. 1007, 89 S.Ct. 492, 21 L.Ed.2d 472, reh. denied 394 U.S. 912, 89 S.Ct. 1014, 22 L.Ed.2d 226; Feguer v. United States, 8th Cir. 1962, 302 F.2d 214, 248–249, cert. denied 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110.

■■ Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. United States v. Cowan, 2d Cir. 1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. United States v. Manning, 5th Cir. 1971, 440 F.2d 1105, 1111. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. *See* Abel v. United States, *supra*; Edwards v. United States, 5th Cir. 1971, 441 F.2d 749; Lurie v. Oberhauser, 9th Cir. 1970, 431 F.2d 330. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. United States v. Edwards, *supra*, 441 F.2d at 753; *cf.* Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.

2. *See generally* Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564.

3. Rule 41. *Search and Seizure*
 *       *       *       *       *
(e) Motion for Return of Property and to Suppress Evidence. · A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant *  *  *.

■ The facts of this case show conclusively that Colbert and Reese abandoned their briefcases before the searches took place. In response to police questions they both disclaimed any interest in the briefcases and began to walk away from them. The police officers in no way compelled these actions. Under these circumstances appellants could entertain no reasonable expectation of privacy in them. Compare Lurie v. Oberhauser, *supra*, where a disclaimer of any ownership or possessory interest in a suitcase in the course of a police investigation was held sufficient without more to support a finding of abandonment. The legal effect of the abandonment is, as noted above, to deprive appellants of standing to challenge the subsequent searches.

■ Appellants argue that Jones v. United States, 1960, 362 U.S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697, precludes a holding that appellants lacked standing to challenge the searches in the prosecution for possession of sawed-off shotguns. We disagree. *Jones*, a narcotics possession case, held generally that a defendant charged with a possession offense has standing as a matter of law to challenge a search which produced the allegedly possessed substance or thing, even if he does not assert a possessory interest in it. The rationale was that

> to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situa-

tion. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of rule 41(e).

362 U.S. at 263–264, 80 S.Ct. at 732, 4 L.Ed.2d at 703–704. The rule established in *Jones* is based on the positions the prosecution takes at trial when the duration of the possession charged includes the time of the search. In the above quoted passage the Court focused on the defendant's possession of the narcotics "at the time of the search." When the time of the possession charged and the time of the, search coincide or overlap, it is indeed inconsistent for the government to argue the defendant lacked sufficient possession to confer standing to challenge the search but had sufficient possession at the same time for conviction. When, however, the government shows that the property was abandoned before the search, there is no such inconsistency. On the contrary, the government may argue without self-contradiction that a defendant had possession at one time for purposes of conviction, but at a later time lacked sufficient possession to confer standing to object to search and seizure. Accordingly, we do not think the *Jones* rule of standing was intended to prevent the government from showing voluntary pre-search abandonment, if it can, or to apply to a possession prosecution when such abandonment is shown. In United States v. Edwards, 5th Cir. 1971, 441 F.2d 749, a panel of this court, in holding a defendant lacked standing to challenge a search and seizure in a possession prosecution because of voluntary pre-search abandonment, did not consider Jones to be an obstacle, and we hold today that *Jones* is not an obstacle to such a ruling.

In apparent conflict with *Edwards* and with our holding in this case is Williams v. United States, 5th Cir. 1969, 412 F.2d

729.[4] To the extent of this conflict *Williams* must be limited to its facts and no longer considered viable authority in this Circuit.

II. *Miranda* Warnings Before Draft Card Request

In addition to challenging the searches in this case, appellants argue that the police demand to see their draft cards was improper because it was not preceded by *Miranda* warnings. Under the government's search-incident-to-valid-arrest argument a determination of the effect, if any, of the draft card requests on the validity of the arrests might be appropriate, but we have declined to take this approach. Since we find the searches in this case valid on the basis of appellant's voluntary pre-search abandonment of the briefcases, we need not and do not decide whether *Miranda* warnings were required under the facts of this case.

■■ *Miranda* requires suppression of the fruits of custodial police interrogation not preceded by proper warnings. It does not require overturning a conviction because of improper police procedure when no prejudice results to the defendant. The record reveals that appellants' admissions, elicited by police questioning, that they had no draft cards in their possession were mentioned only at the hearing on the motion to suppress and never came to the attention of the jury. Hence, even if the draft card request was impermissible under *Miranda*, it did not lead to

error in appellants' trial or taint their convictions in any way.

Affirmed.

JOHN R. BROWN, Chief Judge, with whom COLEMAN, SIMPSON, CLARK, INGRAHAM and RONEY, Circuit Judges, join (concurring):

I join in the Court's opinion and the decision. Whatever doubt there might reasonably be about the abandonment approach followed by the Court, both as to that theory and generally, all of the doubts are removed by a circumstance not mentioned.

Before any *search* of the briefcases was made one of the officers saw one of the two defendants furtively dispose of several shotgun shells from his pocket[5] which were then recovered and identified.

When tested in terms of a reasonable basis for the *search*, not the arrest as a basis for the search, this factor, in the circumstances presented, gave ample grounds to the officers.

True, people may possess shotgun shells and may transport and use them, most often perhaps in the role of sportsmen matching skills against nature's feathered or other small creatures. But a couple of casual "hippie" dressed persons walking around in busy metropolitan Birmingham would not normally be carrying shotgun shells—certainly not without shotguns. Whatever innocuous

---

4. *Edwards*, decided two years after *Williams*, did not cite or refer to *Williams*.

5. The panel opinion described it in this way:

"Then Officer Trimm requested that each defendant produce his draft card. When both defendants denied possessing Selective Service cards, they were placed under arrest and charged with violating 50 U.S.C.A.App. § 462. As the defendants were being placed in the patrol car Officer Pitts noticed one of the defendants withdraw a number of shotgun shells from his pocket and throw them on the ground."

The defendants do not challenge the factual accuracy of the Government's brief to the panel (p. 3):

"As they were being placed in the car, one of the officers observed one of the defendants throwing some shotgun shells to the ground. Defense counsel clearly established that the shells were found *prior* to the search of the briefcases."

Nor do they as to the supplemental brief en banc (p. 3):

"As defendants were being placed in the patrol car, Reese threw some shotgun shells to the ground. Thereafter, while defendants were sitting in the car, the officers returned to the briefcases and opened them, finding a shotgun in each."

inferences the law, with its laudable Fourth Amendment indulgence, might momentarily have to draw were radically changed by active, though furtive, behavior in trying to get rid of the shells, coupled with the even more strange actions in walking away from briefcases they had just previously been carrying.[6]

At that stage a prudent officer could reasonably conclude that something was rotten in Denmark.

Adding altogether, at that moment there was reason to believe that the shells and the briefcases were not unrelated. If there were sawed-off guns in the briefcases, it was presumptively a crime. So the decision to search was a reasonable one in the classic statement of the Rule.

Although what was found does not itself justify the search, when what is found is what was suspected I do not consider that the law rejects the common experience of mankind which—in its everyday judgments having momentous consequences—at least treats what is discovered as a factor in determining the reasonableness of that which was anticipated.

The prudent officer must first be a prudent man. In testing the officer's on-the-spot judgments we should not deny him the judgmental processes of the prudent man.

I would put it on the basis of a reasonable search as of the moment of the search and avoid the problems of search incident to arrest, abandonment or the like.

GOLDBERG, Circuit Judge (dissenting):

I dissent. I refuse to join my brothers as a pallbearer at the funeral of the Fourth Amendment in this Circuit. Although I find, rather disconcertingly, that my funeral dirge is a solo, nonetheless, I believe very strongly that the Court has erred in vacating the panel decision and affirming the district court's denial of the motion to suppress.

I realize that the clamor for law and order in this country is well-founded, but to suppose for one minute that the desired result can be achieved by diluting established rights is to commit a mistake of the highest order. It may offend many people that under our system of criminal justice the criminal goes free when the constable blunders, but such is the law of the land. The Supreme Court has unequivocally mandated that the need to preserve the individual's right of privacy against governmental intrusion often requires that this right take precedence over constabulary duties that must and should be done. It is unfortunate that this Court today treats the Fourth Amendment as if it were some cancerous tumor that must be constantly pared away lest it consume the whole. It is not our function to manufacture excuses for illegal police behavior, as the majority does here. The Fourth Amendment commands a greater respect.

No less than fourteen members of the Court have joined Judge Thornberry's opinion which finds, for the first time in this litigation, that the briefcases were "voluntarily abandoned" and that appellants therefore have no standing to contest the search. The Court's utilization of the abandonment principle on the facts of this case is at best dubious. Five members of this Court have joined Chief Judge Brown's concurrence which, in my humble opinion, utterly ignores the basic thrust of the Supreme Court's decisions in search and seizure, and totally rewrites the Fourth Amendment. Although a majority of the Court has not joined in the Chief Judge's opinion, and it is therefore not the law of the Circuit, I feel impelled to respond to his

6. The Court casts this in terms of search and seizure abandonment. I think it is easier, better and more realistic to avoid the intricate nuances of this standing concept by treating this activity for what it really is—strong, immediate evidence of conduct which may properly give rise to a conclusion that a crime is taking place.

opinion in this dissent. I will deal with each opinion separately.[1]

## I. ABANDONMENT

Judge Thornberry's opinion accurately states the factual background of this case, and I do not think it necessary for me to reproduce the setting. I would merely emphasize the following: Prior to apprehending the two black suspects, the police had been observing them carrying the two briefcases, and there can be no question that the police knew the briefcases were in the possession of the defendants when they were originally apprehended. Furthermore, in the course of the same dialogue that produced the last minute disclaimer of ownership, Colbert responded to police questioning about the briefcases with remarks such as, "I don't have to show you anything."

It is true, as Judge Thornberry states, that "one has no standing to complain of a search or seizure of property he has voluntarily abandoned." The Supreme Court, however, has given little guidance as to the outer limits of this doctrine, and to date the High Court's use of the doctrine has been limited to situations such as the search of an apartment or hotel room which the defendant has unequivocally vacated, leading to the justifiable conclusion that he has surrendered his expectation of privacy in the premises, e. g., Abel v. United States, 1960, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, or the search for items discarded or left in plain view on an open field, e. g., Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. The majority's extension of this doctrine today to a situation of an equivocal verbal disclaimer in the face of impending police discovery is unwarranted. *See* Mascolo, The Role of Abandonment in

the Law of Search and Seizure: An Application of Misdirected Emphasis, 20 Buff.L.Rev. 399 (1971).

The majority quite properly states as its test that, "abandonment is primarily a question of intent . . . and all relevant circumstances existing at the time of the alleged abandonment should be considered." To state the law as such and then reach the conclusion that on the facts of this case Colbert and Reese voluntarily abandoned their briefcases is nothing short of incredible.

As stated earlier, the police had been watching the two men and without question knew Colbert and Reese were in possession of the "expensive looking briefcases" when stopped. There are statements throughout the record by Officer Trimm supporting this irrefutable fact, and the question that the majority deems crucial, "Are these your briefcases?" must be regarded with that in mind. The first inkling of any "abandonment" came only after the appellants were apprehended by the state officers, arrested on wholly unrelated and somewhat dubious grounds,[2] and given the Hobson's choice of making either an incriminating admission or the obviously false disclaimer. Despite the fact that they had been arrested, the defendants were given no *Miranda* warnings prior to being asked about the briefcase. Even if the warnings were not required, their absence certainly added to the *in terrorum* atmosphere that existed at the time of the supposed "voluntary disclaimer." *See* Brown v. Beto, 5 Cir. 1972, 468 F.2d 1284 (Oct. 27, 1972). Furthermore, the patently unbelievable disclaimer of possession was accompanied by statements from the appellants such as, "I don't have to show you anything" and "I don't have to say anything to you." Such statements totally

---

1. The Court has chosen not to discuss directly the grounds for invalidating the search relied on by the original panel, in particular, the failure of the search to qualify under *any* of the "exigent circumstances" exceptions to the warrant requirement. I therefore do not here con-

front these points directly. I adhere to my original opinion for the panel, reported at 454 F.2d 801.

2. There is evidence in the record that Reese was a veteran, and in any event, the two men were never tried for any draft violation.

contradict the contention that this is a case of voluntary abandonment.

Allowing the statements of alleged disclaimer made under the duress of apprehension and the fear of inevitable discovery to constitute a waiver of constitutional rights is unprecedented. While abandonment may not require an instrument under seal or a notarial act, it should not be extracted from *res gestae* words, uttered in fear and without knowledge of legal effect. Abandonment must have some aspect of meaningful voluntariness, which is not, I think, generally found in the confines of a squad car during a period of custodial questioning.

Although the question of the voluntariness of an abandonment has rarely been discussed in appellate opinions, the analogy to the cases involving voluntariness of consent to a search is extremely similar and the consent cases can provide much guidance. As with abandonment, if the trier of fact finds that consent has been voluntarily given to an otherwise invalid warrantless search, the aggrieved party has no standing to object in court to the search. The instant case is particularly close to the consent cases because unlike cases where an intent to abandon can be clearly inferred from the unequivocal act of discarding items or leaving them behind in vacated premises, the abandonment here was based primarily on a post-apprehension verbal denial of ownership. The record is clear that the officers knew full well that the briefcases belonged to Colbert and Reese, and for that reason the denial of ownership uttered in response to the officer's question, is markedly similar to a statement of consent to a search. In both the consent and abandonment situations, the verbal waiv-

er can not be held voluntary if, in fact, no real options were perceived. Bumper v. North Carolina, 1968, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797.

In United States v. Boukater, 5 Cir. 1969, 409 F.2d 537, this Court upheld the voluntariness of the consent given by the defendant to a search made after he was apprehended and *after* he had admitted his guilt to the crime for which the search was made. Recognizing that in cases where guilt had not been admitted a different result might obtain, Judge Thornberry found the law to be consistent with cases in other circuits:

> "The thrust of those cases is that voluntary consent can rarely, if ever, be inferred where the suspect denies his guilt because a man who denies his guilt would not actually be willing for the police to search for contraband he knows will be discovered."

409 F.2d at 539. *See* Channel v. United States, 9 Cir. 1960, 285 F.2d 217; Higgins v. United States, 1954, 93 U.S.App. D.C. 340, 209 F.2d 819.[3] If the instant case does not fit under the rubric quoted above, it is difficult to imagine a case that does.

Not only were defendants put to the Hobson's choice of either admitting ownership of the incriminating evidence or denying ownership and allowing the search, there were no warnings of any kind given that would have informed defendants that had they not denied ownership, the police would not have been able to open the briefcases without first demonstrating to a magistrate that probable cause existed. I cannot believe that these defendants—who had already been followed by the police, stopped, questioned in a somewhat harassing manner, and arrested on arguably pre-

3. In Fletcher v. Wainwright, 5 Cir. 1968, 399 F.2d 62, 64, Judge Thornberry, in reversing a district court's denial of habeas relief found that there could be no voluntary abandonment where the items seized were thrown out of a window following an illegal police entry. Judge Thornberry said, "In such a situation it cannot be said that there was a 'voluntary abandon-

ment.'" Although that case involved abandonment precipitated by *illegal* police behavior, I fail to see how the element of voluntariness is any different in the case now before us. In both instances the defendant was unwittingly forced into the alleged "abandonment" by the police.

textual charges—could have expected the police to refrain from opening the briefcases had they responded affirmatively to the police's query of ownership. What the majority calls a "voluntary abandonment" I would call simply a patently, unbelievable *lie* uttered in desperation.

The disclaimer was obviously prompted by the well-founded fear that the police were going to open the briefcases regardless of what answer was given; therefore why should they admit their crime? The fact that the trial court and the six Judges on this Court who have joined Chief Judge Brown's opinion, had no trouble finding that the briefcases could have been opened by the police regardless of any "abandonment" indicates that my supposition as to defendants' fears can hardly be considered groundless. Voluntariness implies that there was some meaningful alternative that could have been freely chosen and was not. Here, the predicament was clear: admit ownership and confess to the crime, or deny ownership and lose standing to challenge the otherwise illegal search and seizure. If the police did in fact have a right to search the briefcases, then the disclaimer is irrelevant. If the police did not have a right to search the briefcases absent disclaimer, as I believe was the case, the voluntariness of the disclaimer becomes crucial. The inescapable implication of the majority opinion is that had the defendants admitted ownership, the briefcases would not have been searched and therefore a meaningful choice did in fact exist for the two men.

In Perkins v. Henderson, 5 Cir. 1969, 418 F.2d 441, 442, which dealt with the voluntariness of a consent to a search, we said:

"To be valid, a waiver must be an intelligent relinquishment of a known right or privilege, Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. A waiver cannot be valid unless the person knows that his permission may be freely and effectively withheld."

*See also,* Bustamonte v. Schneckloth, 9 Cir. 1971, 448 F.2d 699, 700; Rosenthall v. Henderson, 6 Cir. 1968, 389 F.2d 514, 516. In Bumper v. North Carolina, *supra,* the Supreme Court suppressed evidence obtained during a search made of defendant's premises under an invalid warrant. The government argued that even though the warrant was invalid, the inhabitants had, in fact, consented to the search. Rejecting this argument, the Court found that unless the person giving the consent could reasonably be attributed with the knowledge that consent could be withheld, the consent would be deemed involuntary and standing would not be lost. *See also,* Hoover v. Beto, 5 Cir. 1971, 439 F.2d 913.

It follows from these cases that a disclaimer of ownership, patently unbelievable to all who heard it, cannot be held voluntary when it is clear that the defendant had no idea that he could admit ownership and avoid the search from being made without a warrant. As with the consent cases, the police should be required to have some basis to believe the defendant understood the nature of the question and the options if they intend to rely on it later as a constitutional waiver.

Can it honestly be said that either Colbert or Reese should reasonably have known that had he admitted ownership the briefcases would not have been searched? The police knew the bags belonged to Colbert and Reese, Colbert and Reese knew the police knew, and only Colbert and Reese knew the bags contained guns. What answer should defendants have given to avoid this warrantless search? It is not unreasonable to say that the police should not be able to rely on elicited waivers of this sort as a means of avoiding a magistrate's determination. It is all too obvious that, *in fact,* the police were *not* relying on this disclaimer when they made the warrantless search, and the fact that the government's evidence at the suppression hearing was all directed towards proving probable cause and not abandonment bears this out.

A coerced lie cannot effect an abandonment. No one, but no one, could have believed that defendants were not in possession of the briefcases. To say that defendants knew they were waiving a constitutional right when they uttered these meaningless lies under the threat of imminent discovery is a fiction, pure and simple. This was not a case of physical abandonment—such as the vacation of premises or the discarding of an item in a trash can—where it is fair to say that the defendant knowingly relinquished any expectation of privacy he might have had in the item. Here, the "abandonment" consisted of an unknowing response to custodial interrogation. Are we to say that defendants should have known that despite all that had preceded the disclaimer, they still had a right to privacy in respect to the briefcases that the police would respect if the correct answer was given to the police query? If so, this directly contradicts the reasoning in *Bumper*. The knowing, voluntary quality necessary for verbal constitutional waivers under these circumstances was simply not present. Neither the police officers, the defendants, nor anyone on the streets of Birmingham that day could possibly have believed that anything was "abandoned," voluntarily or otherwise, as a result of defendants' lie.

Aside from the clearly erroneous factual conclusion reached by the majority here, I have other serious complaints with Judge Thornberry's opinion.

A. *No Fact-finding on Voluntariness*

Not only has the majority erred in finding that the abandonment was voluntary, they have reached this conclusion without any factual finding having ever been made by the district court on this point. It is quite clear that throughout the suppression hearing the government's evidence was directed solely towards proving probable cause. Whatever evidence was presented regarding the disclaimer was apparently given only to support the contention that the defendants were acting suspiciously. Evidence of the denial of ownership of briefcases that defendants clearly did own was invariably being presented as supportive of the suspicious atmosphere prior to the search. Indeed, at the end of the presentation of its case at the suppression hearing the government attorney stated to the court, "Your Honor, that is the Government's evidence to support probable cause for the search." Nowhere in the officer's testimony was there any hint of the notion that the briefcases were searched because they had been abandoned. It was not until the very end of the suppression hearing that the government attorney stated, "We would offer another authority that we think the court should consider, that is, if the property had been abandoned by the defendant they have no standing." This was the extent of the government's submission on this issue.

The relevant factual findings by the district court in its memorandum opinion were:

> "Defendant Colbert, who along with Reese had dropped his brief case when the officers approached, told the policemen he was a salesman but refused to say what he was selling or what wares he was carrying in his briefcase. Both Colbert and Reese subsequently disclaimed ownership or knowledge of the brief cases prior to the search and seizure of them.
>
> " . . .
>
> "The search of the brief cases and the seizure of the guns found therein following the lawful arrest of the defendants met the criteria of Constitutional justification enumerated in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)."

There was absolutely no factual finding on abandonment and certainly no finding on voluntariness.

If anything, the finding by the district court—that the search was necessary because the briefcases were still within the ambit of defendants' control (as *Chimel requires*),—cuts against the abandonment theory here adopted by the

majority.[4] In any event, no finding of fact was made, nor were facts developed, as to such questions as whether the defendants or even the police themselves ever considered the briefcases "abandoned" in *any* sense of the word, or whether the defendants reasonably could have been aware that they had any choice whatsoever when responding to the police inquiry. Most importantly, it cannot be overlooked that no finding was ever made by the district court on the ultimate factual question which the majority claims is dispositive of the case— the voluntariness of the abandonment.

The question of voluntariness of a constitutional waiver is a question of fact and this is well established. As we said in Landsdown v. United States, 5 Cir. 1965, 348 F.2d 405, 410:

> "The question whether a defendant has consented to a search and seizure of his property is one of fact, to be determined in the first instance by the trial court."

*See also* United States v. Elrod, 5 Cir. 1967, 441 F.2d 353, 355; Perkins v. Henderson, *supra*; Rosenthal v. Henderson, *supra*; Cipres v. United States, 9 Cir. 1965, 343 F.2d 95, 98. The majority, having ignored this settled procedural maxim, proceeds to make a factual finding on its own, and does so from a record that was not directed toward the specific issue decided. Wholly aside from this argument is the point made earlier, that the factual conclusion drawn from the facts that we *do* have in the record is totally unwarranted.

The burden of proof on the question of the voluntariness of a search and seizure waiver is squarely upon the government. *See* Bumper v. North Carolina, *supra*, 391 U.S. at 548–549, 88 S.Ct. 1788, 20 L.Ed.2d at 802; United States v. Pearson, 5 Cir. 1971, 448 F.2d 1207; United States v. Elrod, *supra,* 441 F.2d at 355; United States v. Payne, 9 Cir. 1970, 429 F.2d 169, 171; Rosenthal v. Henderson, *supra*, 389 F.2d at 516; United States v. De Larosa, 3 Cir. 1971, 450 F.2d 1057, 1066.[5] Not only has the burden of proof been disregarded here, the Court has not even given the defendants an opportunity to develop facts in opposition to its *sua sponte* factual conclusion of voluntariness.[6] As long as the Court feels that abandonment is applicable on these facts, an application I seriously doubt, I would have at least remanded the case for factual findings on the question of voluntariness.

**B.** *Standing and Jones v. United States*

The majority opinion reads Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, as consistent with the proposition that it is permis-

---

4. The fact that six members of this Court are apparently able to adopt both positions at the same time is sharply indicative of the overzealousness with which my brothers inter the Fourth Amendment.

5. It is also clear that this burden is a heavy one. *See* United States v. DeLaRosa, *supra*; United States v. Robinson, 6 Cir. 1970, 430 F.2d 1141, 1143. It is usually framed in terms of the need for the waiver to be knowing and unequivocal and shown by clear and convincing evidence. *See* Bumper v. North Carolina, *supra*; Phelper v. Decker, 5 Cir. 1968, 401 F.2d 232, 236; Perkins v. Henderson, *supra*; Bustamonte v. Schneckloth, *supra; see also* Hoover v. Beto, 5 Cir. 1971, 439 F.2d 913, 919–20; United States v. Berkowitz, 1 Cir.1970, 429 F. 2d 921, 925. Additionally, there has always been a strong presumption *against*

the waiver of constitutional rights. Brookhart v. Janis, 1966, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314. The Second Circuit, adopting the view of the New York Court of Appeals, has stated the test for abandonment as follows:

> " 'The abandonment of property is the relinquishing of all title, possession, or claim to or of it—a virtual intentional throwing away of it. It is not presumed. Proof supporting it must be direct or affirmative or reasonably beget the exclusive inference of the throwing away.' Foulke v. N. Y. Consol. R. R. Co., 228 N.Y. 269, 273, 127 N.E. 237, 238, 9 A.L.R. 1384 (1920)."

United States v. Cowan, 2 Cir. 1968, 396 F.2d 83, 87.

6. Indeed, my colleagues even voted to deny oral argument for the *en banc* reconsideration of this case.

sible to convict someone for a possessory crime while at the same time denying the person standing to challenge the incriminating search for the item possessed, if in fact the person had intentionally abandoned all expectations of privacy in the item or premises searched prior to the search. In this I agree. To hold otherwise would make it impossible ever to abandon the contraband involved in a possessory crime. But the majority takes the above exception to the basic rule of *Jones* (found in the long quote in Judge Thornberry's opinion) too far.

In *Jones,* the police, in the process of a warrantless search of an apartment temporarily occupied but not rented by defendant, found narcotics in a bird's nest located in an awning outside the window of the apartment. A short time before the search an officer standing outside the building had seen the defendant putting his hand on the awning. The Court of Appeals agreed with the district court that defendant did not have standing to challenge the warrantless search because it was not defendant's apartment that was being illegally searched. The Supreme Court reversed, finding that defendant should not have been denied standing.[7] The Court reasoned:

> "To establish 'standing,' Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him. At the least, such a defendant has been placed in the criminally tendentious position of explaining his possession of the

premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial, although that they may is by no means an inevitable holding, but also with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession."

362 U.S. at 261–262, 80 S.Ct. at 731, 4 L.Ed.2d at 702–703. Justice Frankfurter, speaking for the entire Court on this point, went on to recite these words, quoted in Judge Thornberry's opinion, which I cannot avoid repeating:

> " . . . to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)."

362 U.S. at 263–264, 80 S.Ct. at 732, 4 L.Ed.2d at 703–704. Since Jones was being charged with having possessed the items at the moment the police apprehended him, the Court wisely reasoned

---

7. The Supreme Court did not even question the proposition that the defendant maintained a sufficient possessory interest in

the narcotics that had been left sitting in the bird's nest outside the apartment window.

that to forbid him to admit possession for Fourth Amendment purposes while at the same time convicting him for possession was fatally inconsistent.

The proposition that a defendant cannot be .convicted of a possessory crime, while at the same time be deemed "not in possession" for Fourth Amendment purposes has been consistently followed since *Jones*. *See* United States v. Love, 5 Cir. 1973, 470 F.2d 490 (Jan. 9, 1973); Williams v. United States, 5 Cir. 1969, 412 F.2d 729, 731; United States v. Gargiso, 2 Cir. 1972, 456 F.2d 584, 586 n. 3; Velasquez v. Rhay, 9 Cir. 1969, 408 F.2d 9, 10; Niro v. United States, 1 Cir. 1968, 388 F.2d 535, 537.[8] The conviction here came for possession of the briefcases at the time defendants were apprehended. The Hobson's choice given to the defendants by the police's question is indistinguishable from the dilemma faced by the defendant at the suppression hearing that was condemned in *Jones*. In essence the government is saying, "the defendants had possession of the guns at the time of the apprehension for purposes of conviction but the defendants did not have possession at the time of the search for the purposes of standing." The only way to get around *Jones* is to say, as the majority does, that between the time of apprehension and the time of search the cases were voluntarily abandoned. Since I refuse to go along with the majority's finding that the disclaimer—made as it was under custodial conditions, with no knowledge of an alternative, and entirely unbelieveable to everyone who heard it—was in any sense

meaningful, I believe that the standing rationale of *Jones* is fully applicable.

## C. *Edwards and Lurie*

The majority cites two cases to support its conclusion that the abandonment here was voluntary as a matter of law. Edwards v. United States, 5 Cir. 1971, 441 F.2d 749, is the primary authority for the majority's holding. In *Edwards*, a panel of this Court upheld a police search of a car that was left on the highway by a fleeing suspect after a high speed chase. The suspects had simply stopped the car and fled, leaving the car behind, right in the hands of the pursuing police. That case can be distinguished on the facts. Abandonment can be found because the defendants unequivocally left the car on the road, engine running and lights still on. The court reasoned that by leaving the car in this fashion defendants had knowingly relinquished any expectation of privacy they might otherwise have had in the car. Unlike the instant case, abandonment was not based on an unknowing verbal waiver that was precipitated by fear of inevitable and imminent discovery.

The court in *Edwards* did recognize that not every abandonment should be deemed voluntary. "The circumstances here were not sufficiently compelling to make involuntary the choice to abandon his car to the pursuing officer." 441 F.2d at 753. It is hard to discern circumstances more compelling than existed in the instant case. Unless *Edwards* and the majority opinion in this case are read as saying all "abandonments" are volun-

---

8. In Cash v. Williams, 6 Cir. 1972, 455 F.2d 1227, 1229, the court faced a similar problem.

"The state contends that appellant is without standing to challenge the search on the ground that he disclaimed any interest in the articles seized.

We cannot agree with this contention. In order to establish standing to contest a search, a defendant must show that he owned or possessed the seized property *or* that he had a possessory interest in or was present at the premises searched. An additional consideration arises from the fact that when the

crime charged is one of possession, a defendant will not be forced to sacrifice his fifth amendment rights in order to assert his fourth amendment rights. Jones v. United States, 362 U.S. 257, 263–264, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). See also: Glisson v. United States, 406 F.2d 423, 427 (5th Cir. 1969); Weed v. United States, 340 F.2d 827, 829 (10th Cir. 1965); United States v. Eldridge, 302 F.2d 463, 464–465 (4th Cir. 1962); United States v. Lewis, 270 F.Supp. 807, 809 (S.D.N.Y. 1967), aff'd, 392 F.2d 377 (2d Cir. 1968)."

tary *per se,* I do not see why either opinion even bothers discussing the problems under the rubric of voluntariness.

Even if *Edwards* could not be distinguished on its facts, it should not be followed for two additional reasons. First, although Judge Roney does not explicitly deal with this problem in his opinion in *Edwards,* it seems clear that the suppression hearing held by the district court in that case was at least in part directed towards an abandonment rationale. The panel quotes the officer's testimony that he conducted the search, "because he [defendant] abandoned the car. . . ." 441 F.2d at 751. There is no indication in the panel opinion as to whether the district court made any factual findings as to abandonment. In the instant case, where the facts are at best equivocal and the government's evidence below was clearly directed at proving probable cause and not abandonment, the factual findings were clearly inadequate for us to make a voluntariness determination.

Secondly, insofar as the Court chooses to follow *Edwards* rather than Judge Thornberry's opinion in *Williams,* I must disagree. The standing discussion in the *Edwards* opinion was based entirely on the standing cases involving vacated rooms and other similar situations, and it cited no authority for its finding that abandonment in the face of imminent police discovery can be voluntary. Furthermore, the search in *Edwards,* as that court explicitly found, was justified under Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, regardless of any finding of abandonment. In short, the abandonment ground in *Edwards* was not only applied incorrectly, but was totally unnecessary to the court's decision. I think this Court errs in making an en banc application of *Edwards* to the facts of this case.

The second case cited by the majority on this point is Lurie v. Oberhauser, 9 Cir. 1970, 431 F.2d 330. There the Ninth Circuit found a voluntary abandonment where the defendant refused to identify a suitcase containing contraband as his own even though he had earlier been seen with the suitcase and a claim check for the case had been found in his possession. The facts, although somewhat less compelling,[9] are admittedly similar to the facts in the instant case. *Lurie,* however, can be distinguished because in that case "the District Court *held* that appellants abandoned the incriminating evidence and therefore have no standing to object to its search at the police station." 431 F.2d at 333 [emphasis added]. Here, this factual finding was neither made nor addressed by the district court.

In any event, I feel Judge Ely's dissent in *Lurie* is more convincing and a better statement of the applicable law. He said:

"I cannot, however, agree with the decision of my Brothers that the appellants have forfeited all right to challenge the admittedly unconstitutional search of their property. The majority reasons that the appellants have no sufficient standing to make the challenge because they did, in effect, abandon their property by disclaiming its ownership. I cannot accept that rationale, for, as I see it, the appellants really had no choice, when met with the questions put to them without adequate advance warning of their rights, except to utter their disclaimers of ownership or to sacrifice the right guaranteed to them by the Fifth Amendment. *See* Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), wherein the Supreme Court specifically limited its opinion to crimes for which mere pos-

---

9. The disclaimer in *Lurie* came after *Miranda* warnings had been given and was not as clearly frivolous as were the disclaimers made by Colbert and Reese. In addition, the defendants in *Lurie* were arrested for the very crime for which the search was conducted, and there was no question of probable cause existing for the search of the suitcase. The probable cause in the instant case is close at best, *see* Part II, *infra.*

session of contraband is sufficient for conviction (e. g. narcotics). I see no compelling distinction between that situation and that here involved, especially since the California appellate court, in reviewing appellants' original convictions, remarked that mere possession of recently stolen property is sufficient for conviction when accompanied by 'only * * * slight corroboration.' People v. Lurie, 257 Cal. App.2d 98, 102, 64 Cal.Rptr. 637, 641 (1968)."

431 F.2d at 334.

In summary, I strongly believe that the majority has made an unwarranted and unprecedented expansion of the *abandonment doctrine* by applying it to the facts of this case, particularly in light of the total absence of factual findings on the issue of voluntariness by the trial court. To whittle away the Fourth Amendment in this fashion can only result in its eventual demise.

### II.

Chief Judge Brown's concurring opinion seems to say this: "Defendants were wearing hippie clothes, carried briefcases, and were seen discarding shotgun shells. The police therefore had a reasonable ground to believe that the briefcases contained guns." It was therefore reasonable to search the briefcases without a warrant even though the defendants were safely confined in the police car and well beyond the permissible range of a *Chimel* search. I find this approach not only dangerous but also in flat contradiction of virtually every statement made by the Supreme Court on search and seizure in the last ten years.

The opinion says that between the shells and the "hippie" dress the officers "could reasonably conclude that something was rotten in Denmark, . . there was reason to believe that the shells

and the briefcases were not unrelated." And finally, "the decision to search was a reasonable one in the classic statement of the rule."[10] Since the concurrence fails to cite any authority, it is difficult to discern just what rule it relied upon to uphold this warrantless search. From the language of the opinion I can perceive two possible rationales that are thought to justify finding a "reasonable decision" to search.

First, if the opinion is saying that the search was justified on the basis of reasonable suspicion, short of probable cause, the only viable legal rationale for upholding the warrantless search would be the need to protect the officer's safety. *E. g.,* Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Adams v. Williams, 1972, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. *See also* Chimel v. California, *supra.* Since the opening of the briefcases occurred while the men were safely in the confines of the police car, the case could hardly fit within the limited pat-down allowed in *Terry* or *Adams*,[11] the search cannot stand up as one made for weapons on less than probable cause. The opinion specifically denies that it is based on search incident to arrest, *see Chimel, supra,* so I need not repeat the refutation of this argument that appears in my opinion for the panel. 454 F.2d 801.

Secondly, the concurrence could be read as saying that there *was* probable cause for the search and that the search was therefore justified. This is erroneous, first because there was no probable cause and secondly, even if there was, a warrant could and should have been obtained.

I have serious doubts as to whether, under any of the Supreme Court cases, there was probable cause to search these briefcases. There are, as Chief Judge Brown states, some grounds for saying

---

10. Since "the rule" whatever it may be is apparently enunciated for the first time in the Chief Judge's opinion, without a single citation to support or explain it, it is difficult to refute the claim that these facts constitute the "classic statement."

11. The record reveals that the defendants were given a pat-down prior to being placed in the squad car.

the defendants' behavior was suspicious. He points to the "hippie-type" dress of defendants, the discarded shells, the expensive briefcases, and the suspiciousness of the defendants' behavior generally. It is important to remember that the police did not know Colbert and Reese, had no previous reason to be suspicious of them,[12] and had absolutely no information of any sort (other than the aforementioned observations) at the time of the search, that would make them believe the briefcases contained contraband.

I realize that the dress of judges tends toward the conservative—white shirts and dark suits. I am shocked, however, that the Chief Judge can find, as a matter of law, that "hippie dress" is probative of illegal activity.[13] As long as I am called upon to enter this dialogue, I must dissent to this line of reasoning. I do not subscribe to the thesis that every contemporary sartorial or tonsorial heterodoxy gives the cop on the beat the right to search, as the Chief Judge implies. Today we say that "hippie dress" is evidentiary of probable cause. Tomorrow, perhaps we will say that green patent-leather shoes, cerise shirts, or even bow ties, because of their nonconformity to prevailing norms, are also probative. I fail to see any limits to the dangerous implication in the Chief Judge's opinion. The fact that the police saw these men carrying briefcases and saw one of them discard something, later found to be a few shotgun shells does not, in my opinion, constitute probable cause to search the briefcases. A mere suspicion, even if valid, does not necessarily constitute probable cause. *See* Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503;

Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed.2d 1879; Beck v. Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

Assuming *arguendo* that there was probable cause, the more important problem is that the concurrence totally ignores the fact that under every Supreme Court reading of the Fourth Amendment, a warrant is still required before a search can be made unless exigencies make it impractical for the police to get one. It is not for the police, or for the court after the fact, to assess the existence *vel non* of probable cause. Rather, the law requires that absent "exigent circumstances" probable cause is to be determined by a detached, neutral magistrate. Prior to reading the Chief Judge's opinion I would have thought that this proposition was too well-established to dispute. The following excerpt from Judge Godbold's opinion in United States v. Resnick, 5 Cir. 1972, 455 F.2d 1127, 1131, amply sets out the basic rule:

> "In United States v. Pearson, 448 F.2d 1207 (5th Cir. 1971), this Circuit noted the Supreme Court's emphasis upon the disfavor attached to warrantless searches expressed in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), quoting from that case the following:
>
> > '[T]he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those

12. There is some testimony in the record that one of the officers initially thought that Reese resembled another man wanted for a "serious" charge that the officer could not remember.

13. The only evidence whatsoever in the record relating to the way defendants were dressed is the following testimony of Officer Trimm:

"Mr. Reese had a black hat, I would say a Spanish-wide brim type hat and more or less what I would call hippie type clothes. And Mr. Colbert had a black knee-length raincoat on over dark pants. I believe he had an Afro haircut and I don't know what type shoes they had on."

who seek exemption \* \* \* that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it." ' (Footnotes omitted.)

448 F.2d at 1211 *quoting* 403 U.S. at 454, 91 S.Ct. 2022, 29 L.Ed.2d at 576. In United States v. Sokolow, 450 F.2d 324 (5th Cir. 1971) and United States v. Drew, 451 F.2d 230 (5 Cir. 1971), we have again recognized the stringent burden upon the government of bringing itself within one of the narrowly drawn exceptions and of showing that

the exigencies of the situation made it imperative to proceed 'outside the judicial process, without prior approval by judge or magistrate.' "
*See generally* Note, 9 Houston Law Rev. 140 (1971).[14]

The concurring opinion makes no pretense of relying explicitly on any of the recognized exigent circumstances exceptions to the warrant requirement. If the opinion says there were exigent circumstances, it simply does not accord with the facts. At the time the briefcases were searched, the defendants were safely in the police car, well removed from

14. In a recent opinion rejecting the government's argument that a warrantless search was "reasonable," Judge Morgan wrote:

It is, of course, an elementary constitutional principle that police officers must go before a neutral government official and obtain a search warrant before intruding into a private dwelling. This requirement attaches even though the facts within the knowledge of the police officers would have authorized the issuance of a warrant.

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. *Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.* Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent."

Johnson v. United States, 1948, 333 U.S. 10 at 13–14, 68 S.Ct. 367 at 369, 92 L.Ed. 436; accord Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Camara v. Municipal Court, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; Schmerber v. California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. If evidence obtained from a warrantless search is proffered at trial, the burden is on the prosecution to come within some exception to the warrant requirement. United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; United States v. Edwards, 5 Cir. 1971, 441 F. 2d 749; Williams v. United States, 5 Cir. 1967, 382 F.2d 48; see Johnson v. United States, supra. In the case at hand, we have carefully reviewed the record and there is simply no plausible explanation as to why customs officials failed to go before a magistrate and obtain a search warrant. The government does state in its brief that the circumstances surrounding the raid on the Scheffer house were such that there was not enough time to secure a search warrant. This statement seems incredible, however, in view of the fact that customs agents, acting through the cooperating smugglers, actually planned the cocaine transfer and could have controlled the time at which it took place. *Slight delay or the inconvenience of presenting facts to a magistrate are not sufficient circumstances to bypass the warrant requirement.* Johnson v. United States, supra.
United States v. Sheffer, 5 Cir. 1972, 463 F.2d 567, 574–575 [Emphasis added.]

the cases. Had the two presumably-armed policemen still feared for their safety, they could have *inter alia,* (a) handcuffed the already arrested defendants, (b) locked the car doors, or (c) placed the briefcases in the trunk of the police car. The exigencies of the circumstances in no way required the added invasion of privacy that occurred here when the officers opened and searched the closed briefcases. In *Chimel,* the Supreme Court limited the permissible scope of warrantless searches as follows:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . .

> There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

395 U.S. at 762–763, 89 S.Ct. at 2040.

Nor does this search fit within the so-called "car exception" to the warrant requirement. First, this was not a car in danger of being moved; rather, it was briefcases that could have easily been seized and brought before a magistrate as required by Coolidge v. New Hampshire in these situations, As we said in

United States v. Brett, 5 Cir. 1969, 412 F.2d 401, 406:

> "The fact that the police have custody of a prisoner's property for the purpose of protecting it while he is incarcerated does not alone constitute a basis for an exception to the requirement of a search warrant. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

> " . . .

> "We are not prepared to say that an accused whose effects are held by the police for safekeeping has, by the single fact alone of the police custody of the property, surrendered his expectations of the privacy of those effects."

Secondly, unlike Chambers v. Maroney, *supra,* and other cases upholding warrantless car searches under exigent circumstances, the existence of probable cause was here less than obvious, *cf.* Preston v. United States, *supra.* In any event, under *Coolidge,* the necessity for avoiding a magistrate's determination of probable cause was simply not present. In short, "exigent circumstances" means there were practical reasons for not waiting to get a warrant. Here, where the defendants had already been arrested for draft card violations and were already in custody, there was no reason at all for not waiting.

Finally, if the Chief Judge's opinion is read as saying that under the totality of circumstances the warrantless search was reasonable,[15] even if not easily categorized under any of the recognized exceptions, I cannot agree. First, as nice as a rule of this type sounds, it is not the established test. If every search made with probable cause that turns up something incriminating is deemed reasonable *ex post facto,* why bother with the warrant requirement at all? Again, I fail to see the limits to this *gestalt* approach to the Fourth Amendment.

---

15. *Cf.* United States v. Preston, 6 Cir. 1972, 468 F.2d 1007, where Judge Edwards applied a totality-reasonableness approach in a situation where this approach was arguably justified.

In addition, I do not think the Birmingham police acted reasonably here. Two black men in "hippie garb" were noticed by police on the streets of Birmingham, followed, and eventually stopped and questioned. They were arrested for failing to carry their draft cards, despite the fact that there was evidence that at least one of them protested that he was a veteran. After this arrest, the policemen immediately opened the "expensive-looking" briefcases which had obviously intrigued the officers from the moment the defendants were first seen carrying them. Unlike the Chief Judge, I am not prepared to consider what was eventually found as a result of the warrantless search to be a factor in determining the reasonableness of the search itself. This is totally inconsistent with prior law, and as with the rest of the concurring opinion, it seems to regard the Fourth Amendment as some minor nuisance.

If the police behavior in this case is considered "reasonable" under the Fourth Amendment, which insures "the right of the people to be secure in their persons, houses, *papers, and effects*." I am troubled as to the future of the right to privacy in this country.

The on-the-spot judgment of an officer is subject to constitutional scrutiny, and his badge does not endow him with the power or right to abrogate the Fourth Amendment. I refuse, despite the importunings of our time, to desecrate the Fourth Amendment in the name of "law and order" and in order to redress people dressed in hippie clothes on the streets of Birmingham. In the name of "rottenness in Denmark" we have no right to do away with warrants and the other protections that our founding fathers put into the Constitution. I prefer hippies surreptitiously dropping shotgun shells to a police state where every "prudent" whim of a policeman becomes a constitutional nemesis.

Chief Judge Brown, in a recent opinion finding that the defendant's consent to a warrantless search was involuntary and therefore the search invalid, stated:

"The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a Government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence."

United States v. Elrod, *supra*, 441 F.2d at 356 (citing Mapp v. Ohio [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 1081]). Many will rue the day that they bartered away the Fourth Amendment in a surface attempt to make our streets safe. I refuse to join my brothers in this ill-fated endeavor.