OPINION
Defendant, Dajuan Deloach, appeals from his conviction and sentence for Drug Abuse, which were entered on his plea of no contest after the trial court denied his motion to suppress evidence.
The evidence that Deloach moved to suppress was a bag containing crack cocaine that officers seized after Deloach discarded it. Dayton Police Officer Vickie Stringer testified concerning the circumstances of the seizure at the suppression hearing, stating:
 "We were on bicycles, and we were going to Nathan's Superette market. When I was coming up the alley, Dejuan was coming from the side of the building. And we basically came face to face at the corner of the building.
 When Dajuan saw me, he had a baggie in his hand. I said, "Hey, what you got?" And he saw me and took off running, ran to the side of the building. Threw the baggie — he was trying to throw it into a back yard, and it hit a privacy fence.
 And the other two officers were right there where he ran. They saw him throw it. I went over to it."
(T. 5).
Officer Stringer also testified that she recognized the contents of the bag as crack cocaine and seized it. The other two officers with her pursued Deloach and arrested him on a crack cocaine charge.
Dayton Police Officer John Beall was one of the two other officers involved. Officer Beall testified that he first saw Deloach running away from Officer Stringer, "carrying a large bag of crack cocaine in his hand." (T. 25). Officer Beall was ten to twelve feet away from Deloach at the time. (T. 30). Officer Beall stated that "[i]t looked like crack cocaine in the bag," (T. 25). He also saw Deloach attempt to throw the bag over a fence into a yard, unsuccessfully (T. 26).
Where the presence of police officers is lawful and property is discarded by a defendant in a public place where he cannot reasonably have any continued expectancy of privacy in the discarded property, the defendant will be held to have abandoned the reasonable expectation of privacy he had in the article which the Fourth Amendment protects. Then, the defendant lacks standing to object to its seizure on Fourth Amendment grounds. Hester v.United States (1924), 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898.
Deloach argues that the officer's presence was not lawfulbecause it involved and arose from an attempted detention forwhich they lacked the reasonable and articulable suspicionrequired by Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed. 889. Building on that claim, he goes on to argue that "[a]ny alleged abandonment was a result of police misconduct and thus appellant has standing to object to the search and seizure of the alleged crack cocaine." (Brief, p. 3).
Officer Stringer testified that when she asked Deloach, "Hey, what you got?", she was issuing a request, not a command. (T. 21). Nevertheless, the statement was made by a police officer in full uniform, and it constituted an inquiry which had an official purpose. "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person." Terry, supra, 392 U.S., at 17.Viewing the circumstances in their totality, we conclude that theencounter that Officer Stringer described was an attemptedinvestigative detention for purposes of Terry.
It is difficult to discern from this record with what reasonable and articulable suspicion of criminal activity Officer Stringer was presented at the point when she detained Deloach, or attempted to. She did not testify that she called out her "request" because she saw that the bag in the Defendant's hand contained crack cocaine. From her testimony we only know that he was a man whom she saw walking down an alley, albeit one that was the frequent site of drug offenses. That fact presents no reasonable and articulable suspicion of criminal conduct, even when the additional element of his immediate flight is considered. "Were it otherwise, `anyone who does not desire to talk to the police and who either walks or runs away from them would always be subject to legal arrest,' which can hardly `be countenanced under the Fourth and Fourteenth Amendments.'" LaFave, Search andSeizure, 3d Ed., Section 3.6(e), quoting from United States v.Margeson (1996), 259 F. Supp. 256.
Deloach's problem lies not in his flight but what it revealed. Officer Beall testified that he saw Deloach holding a bag of crack cocaine in his hand as he ran off, attempting to discard the bag as he did. That fact alone created probable cause to arrest Deloach independent of any defects in the detention that Officer Stringer had attempted. The officers were then authorized to seize the crack cocaine, not only incident to their arrest of Deloach on a possession charge but also because Deloach's actions clearly demonstrated that he had abandoned any reasonable expectation of privacy in the bag and its contents. Katz v.United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576.
We do not know what features of the bag that he saw Deloach carrying caused Officer Beall to conclude that it contained crack cocaine. He testified that Deloach "was carrying a large bag of crack cocaine in his hand" and that "it looked like crack cocaine in the bag." (T. 25). He also stated that he was then ten to twelve feet away from Deloach. (T. 30). The trial court appears to have credited this testimony, which went unchallenged, to conclude that the officers had probable cause to arrest Deloach based on what they saw the bag contained. On this record, no other holding is reasonably possible.
These facts parallel those of State v. Smith (1989), 45 Ohio St.3d 255, rev'd on other grounds at 494 U.S. 541, 110 S.Ct. 1288,108 L.Ed.2d 464. There, officers saw Smith emerge from a house, carrying a brown paper bag "gingerly." Suspecting that the bag contained contraband, the officers called out to Smith to "come here a minute." Smith continued on his way a short distance to the driver's door of a car, where he tossed the bag onto the hood and then turned to face the officers. The officers then seized the bag and arrested Smith after they opened the bag and discovered drugs and drug paraphernalia.
The Ohio Supreme Court affirmed Smith's conviction on a finding that the search of the bag was incident to his lawful arrest. The United States Supreme Court, in a unanimous opinion, reversed, stating that "justify[ing] the arrest by the search and at the same time . . . the search by the arrest' just `will not do.'" Id., at 543, quoting Johnson v. United States (1948),333 U.S. 10, 68 S.Ct. 367, 97 L.Ed. 436. The court added: "`[i]t isaxiomatic that an incident search may not precede an arrest andserve as part of its justification.'" Id., quoting Sibron v. NewYork (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.
The major point of distinction between these facts and those in Smith lies in the officer's observations and conclusions about the bag they saw in the suspect's hands. Smith carried a brown paper bag, similar to a grocery bag. The fact that he carried it "gingerly" was insufficient to create probable cause to believe that it contained contraband. Here, Deloach carried what Officer Stringer described as a "baggie." (T. 5). Assuming that it was transparent, then Officer Beall's conclusion that Deloach "was carrying a large bag of crack cocaine in his hand" and that "it looked like crack cocaine in the bag" is reasonably supported by the facts. The officers who stopped Smith could not have arrived at a similar conclusion.
Also instructive, and perhaps more to the point here, are the statements that both courts made rejecting the State's claim that Smith had "abandoned" the bag and its contents for Fourth Amendment purposes when he threw it on the hood of the car. The Ohio Court said:
 We do not adhere to the view taken by the lower courts to the effect that appellant had "abandoned" the bag when he threw it on the car and thus no longer retained any reasonable expectation of privacy with regard to it. Appellant was, at most, only two steps away from the bag at any time, and the evidence presented at the suppression hearing is clear and appellant physically attempted to prevent Officer Thomas from seizing the bag. Thus, in our view, appellant had not "`voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a "reasonable" expectation of privacy with regard to it at the time of the search.'"
(Emphasis added.) State v. Freeman (1980), 64 Ohio St.2d 291, 297,18 O.O.3d 472, 476, 414 N.E.2d 1044, 1048, quoting United Statesv. Colbert (C.A.5, 1973), 474 F.2d 174, 176. State v. Smith, supra,note 6, at p. 263. The United States Supreme Court endorsed thatholding, stating: "[A] citizen who attempts to protect his privateproperty from inspection, after throwing it onto a car to respond toa police officer's inquire, clearly has not abandoned that property."State v. Smith, supra, at 493-494.
The facts here contrast starkly with those in Smith on theissue of abandonment. Deloach didn't stand and face the officers,but instead ran away. More importantly, he attempted to throw thebag over a fence while he did. Those facts unquestionablydemonstrate that he relinquished any reasonable expectation ofprivacy he had in the bag and its contents, permitting its seizureby the officers. Also in contrast to Smith, however, the officers had probable cause to arrest Deloach before they seized the bag because of what they saw that the bag held when it was in Deloach's hands.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
 __________________________ GRADY, P.J.,
FAIN, J. and YOUNG, J., concur.