# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 4, 2003 Session

## STATE OF TENNESSEE v. THADDAEUS MEDFORD

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 6962     Joseph H. Walker, III, Judge**

---

### No. W2002-00226-CCA-R3-CD[1]  - Filed October 21, 2003

---

Before us are the consolidated appeals of Thaddaeus Medford who, in his first trial, was convicted of Class E felony evading arrest.  The jury in that trial deadlocked on the companion charges of cocaine possession with intent to deliver and drug paraphernalia possession.  Upon retrial, the defendant was convicted of the two possession offenses.  He appeals the legal sufficiency of his evading arrest and cocaine possession convictions, complains that testimony about the street value of cocaine and money found in his automobile was erroneously admitted, and argues that his constitutional right to be free from Aunreasonable searches and seizures@ was violated.  Based on our review of the record, the briefs of the parties, and applicable law, we affirm the defendant's evading arrest conviction.  As to the cocaine possession conviction, we affirm the trial court's evidentiary rulings and rejection of the defendant's motion to suppress, but we, nevertheless, reverse the conviction because the evidence is legally insufficient.

### Tenn. R. App. P. 3; Judgment of the Circuit Court  is Reversed in Part and Affirmed in Part.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

J. Thomas Cadlwell, Ripley, Tennessee; and Charles S. Kelly Sr., Dyersburg, Tennessee, for the Appellant, Thaddaeus Medford.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the Appellee, State of Tennessee.

---

[1]     The cocaine and paraphernalia cases were originally docketed on appeal as case No. W2002-01861-CCA-R3-CD, but the consolidation order provides that all future references should be to case No. W2002-00226-CCA-R3-CD.

**OPINION**

Around midnight on January 9, 2000, four members of the City of Ripley-Lauderdale County Drug Task Force were patrolling the Halls area in an unmarked 1993 Chevrolet Suburban. Lauderdale County Sheriff's Department Investigator John Thompson was driving the vehicle; Ripley Police Officer Jeff Tutor occupied the front passenger seat. Ripley Police Officer Gregg Land was seated behind Thompson, and Officer Richard Mawyer sat behind Officer Tutor.

While proceeding on Highway 209 toward Gates, Investigator Thompson spotted a black Impala traveling in the same direction on Highway 209. Investigator Thompson described the Impala as "weaving" or "drifting within its own lane," but it was not speeding. Thompson's Task Force companions, however, variously described the vehicle as being all over the roadway, over the center line, and weaving on the road. Investigator Thompson activated blue lights and a siren, which were built into the unmarked Suburban, and signaled the other vehicle to stop.

The vehicle did not immediately halt. It continued on Highway 209, turned onto Beech Bluff Cemetery Road, and stopped after traveling a short distance. All four officers exited the Suburban. Officer Tutor approached the driver's side of the car, and Officer Mawyer went to the passenger's side. The driver, the defendant, complained, "Why are you all stopping me? I haven't done anything." Officer Tutor instructed the defendant to turn off his car engine. The defendant did not comply; instead, he drove off at a high rate of speed with the driver's side door open, slinging dirt and mud. As the defendant sped off, Officers Mawyer and Tutor hurled

their flashlights at the defendant's vehicle, breaking through the back window. The officers raced back to the Suburban to pursue the defendant.

Officer Land did not reach the Suburban before the other officers drove off in pursuit. The officers lost sight of the defendant after he topped a rise in the road. Approximately one mile past the initial point of the stop, Beech Bluff Cemetery Road forms a AT@ intersection with another road. When the officers reached the intersection, they discovered the defendant=s vehicle off to the left in a ditch where the defendant had wrecked after attempting to turn at the intersection and losing control. The defendant was standing in the roadway outside his vehicle. Investigator Thompson and Officer Tutor forced the defendant down, placed him in handcuffs, and stood him upright. The defendant did not appear inebriated or otherwise impaired, but he was bleeding from an injury to his forehead.

The officers searched the defendant=s vehicle and retrieved their flashlights. They discovered $278 in cash scattered in the floorboard of the car, along with a pager and cellular telephone. Washing powder and children=s toys were inside the car trunk. No drugs were in the defendant=s vehicle. Investigator Thompson searched the defendant after he was handcuffed and confiscated a razor blade, containing a powder residue, from the defendant=s left front pants pocket. The razor blade was not submitted for testing.

After the defendant was in custody and after the accident scene was secured, the officers began backtracking the path that the defendant had taken when he fled the initial stop. Within approximately one hour, Investigator Thompson and Officer Tutor located a plastic bag, the contents of which were later tested and determined to be 8.4 grams of cocaine. No identifiable fingerprints were on the bag. The bag was found a short distance, approximately 200 yards, from the initial stop, in the grass on the shoulder of Beech Bluff Cemetery Road.

The defendant was charged with possession of .5 grams or more of a Schedule II controlled substance with intent to deliver, Tenn. Code Ann. ' 39-17-417(a)(4), (c)(1) (Supp. 2002), possession of drug paraphernalia, *id.* ' 39-17-425 (1997), and Class E felony evading arrest, *id.* ' 39-16-603(b)(1), (3) (1997). The defendant filed a pretrial motion to suppress the razor blade seized from his person and the cocaine confiscated from the roadway. The trial court denied the motion after an evidentiary hearing.

The defendant was tried by jury and found guilty of Class E felony evading arrest. The jury, however, was unable to reach a verdict on the possession charges, and the trial court declared a mistrial on those counts. On retrial, the defendant was convicted of the cocaine and drug paraphernalia charges. The trial court imposed a community corrections sentence of eighteen months for the evading arrest conviction. For the cocaine possession conviction, the trial court sentenced the defendant to a term of nine years, and for the drug paraphernalia conviction, the trial court imposed a sentence of eleven months and 29 days. The sentences for

-4-

the drug convictions were ordered to be served on community corrections. The trial court ordered concurrent sentencing for all the convictions, producing an effective sentence of nine years.

For each conviction, the defendant timely filed a motion for new trial; those motions were denied. He, likewise, timely filed notices of appeal. The defendant=s cases have been consolidated for disposition by this court. On appeal, the defendant challenges the sufficiency of the convicting evidence, renews his complaint that illegally seized evidence should have been suppressed, and objects to the admissibility of opinion testimony about the street value of crack cocaine and about the money found in the defendant=s vehicle.

## I. Suppression Issues

Pretrial, the defendant filed a motion to suppress Aany and all@ evidence seized in connection with his activities on January 9, 2000. As grounds, the defendant alleged: (1) the law enforcement officers lacked probable cause to stop his vehicle; (2) the officers lacked probable cause to search the defendant, his vehicle, or Athe area in which he was traveling@; (3) no exigent circumstances justified the warrantless searches; and (4) the evidence seized was not in plain view. The trial court conducted an evidentiary hearing and denied the motion. The trial court ruled that the cocaine found on the side of Beech Bluff Cemetery Road had been abandoned and, therefore, should not be suppressed. As for the razor blade, the trial court ruled

that the defendant=s erratic driving justified the investigatory stop, that when the defendant fled after stopping, the officers were justified in pursuing and arresting the defendant, and that the razor blade in the defendant=s pants pocket was properly seized incident to his arrest.

We review the trial court=s findings and rulings pursuant to a familiar standard. On appeal, Aa trial court=s findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.@ *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996), *quoted in State v. Flake*, 88 S.W.3d 540, 561 (Tenn. 2002) (Opinion Denying Petition for Rehearing). Credibility questions, evaluations of the weight of the evidence, and evidentiary disagreements fall within the trial court=s province as the trier of fact. *See State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000); *Odom*, 928 S.W.2d at 23. The party prevailing in the trial court Ais entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.@ *Odom*, 928 S.W.2d at 23; *see State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). Moreover, the reviewing court is not limited to what transpired at the suppression hearing; rather, it may consider the entire record, including trial transcripts. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998). We hasten to add that the trial court=s conclusions of law, however, are reviewed *de novo* without a presumption of correctness. *See State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

## A. Abandoned Narcotics

There is no factual dispute in this case that the cocaine that formed the basis for the charge of possession with intent to deliver was discovered and seized from the grassy shoulder of Beech Bluff Cemetery Road, approximately 200 yards from the point where the defendant initially stopped his vehicle. None of the officers saw the defendant divest himself of the cocaine as/after he drove away at high speed, and the defendant never admitted that the cocaine had been his.

Relying on *State v. Holbrooks*, 983 S.W.2d 697 (Tenn. Crim. App. 1998), *State v. Baker*, 966 S.W.2d 429 (Tenn. Crim. App. 1997), and *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547 (1991), the trial court determined that at the time the defendant cast the cocaine out of his car window, he was no longer Aseized@; therefore, the cocaine found on the roadside by the officers could not be the product of any Aillegal seizure.@ The cocaine had been abandoned, the trial court concluded, and was lawfully recovered by the police.

We review the constitutional and legal standards applied by the trial court purely *de novo*. As we shall explain, that review persuades us that, although suppression is not required, the trial court applied an erroneous legal standard. *See State v. Daniel*, 12 S.W.3d 420, 423-24 (Tenn. 2000) (trial court=s conclusion that seizure did not occur is conclusion of law and *de novo* review applies).

At least three interrelated concepts influence how this suppression issue is analyzed and resolved.  They are:  (i) police/citizen encounters; (ii) the plain view doctrine; and (iii) abandoned property

**(i)  Police/Citizen Encounters**

The Fourth Amendment of the United States Constitution protects the Aright of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures@ and commands that Ano warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.@  U.S. Const. amend. IV.  The Tennessee Constitution similarly provides, in relevant part, that Athe people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures.@   Tenn. Const. art. 1 ' 7.  These constitutional protections Aare implicated only when a police officer=s interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen.@  *Daniel*, 12 S.W.3d at 424.  Stated another way, these constitutional safeguards do not attach to law enforcement activities unless the activities qualify as a Asearch@ or Aseizure@ within the meaning of the Fourth Amendment and/or Article 1, Section 7 of the Tennessee Constitution.  *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *see also Daniel*, 12 S.W.3d at 425 (A[C]ourts have repeatedly held that even when police have no basis for suspecting that an individual has committed or is about to

-8-

commit a crime, the officer may approach an individual in a public place and ask questions without implicating constitutional protections.@).

In *State v. Randolph*, 74 S.W.3d 330 (Tenn. 2002),[1] our supreme court, as a matter of interpreting Article 1, Section 7 of the Tennessee Constitution, parted company with the federal constitutional view expressed in *Hodari D.* that a Aseizure@ occurs only when an officer applies physical force to detain an individual or when the individual yields to a show of authority. *Randolph*, 74 S.W.3d at 337. In contrast to the *Hodari D.* Court=s definition of a seizure, our supreme court ruled that an officer=s show of authority can constitute a Aseizure@ even though a suspect is not actually restrained or even if the suspect fails to submit to the official show of authority. *Randolph*, 74 S.W.3d at 335-38.

> The pertinent facts in *Randolph* were that 15 minutes after Officer Harrington received notification of a possible burglary in progress at Doc=s, he saw the defendant riding a small, chrome-silver BMX-style bicycle in his direction approximately four blocks away from Doc=s. Officer Harrington requested a description and was told only that the suspect was a white male. Based merely on a hunch, Officer Harrington decided

---

[1] The opinion in *Randolph* was released May 3, 2002, only a short time after the defendant filed his notices of appeal.

to stop the defendant, activated his blue lights to identify himself as an officer, and ordered the defendant to stop. When the defendant ignored the order and kept going, Officer Harrington turned his police car around and pursued the defendant for approximately one and one-half blocks.

*Id*. at 337-38. The officer eventually caught up with Randolph, but before he was physically apprehended, he tossed a shotgun and two boxes of ammunition into the grass and fled on foot. *Id*. at 333. AWe hold,@ the supreme court wrote, Athat under the circumstances of this case the defendant was seized when the officer activated the blue lights on his patrol car, ordered the defendant to stop, and pursued him for several blocks.@ *Id*. at 338. The court concluded, ABecause the officer lacked reasonable suspicion or probable cause to effect such a seizure, the evidence seized from the defendant was properly suppressed by the trial court.@ *Id*.

Pursuant to *Randolph*, we can reach no conclusion other than the defendant in this case was seized when the drug task force officers activated the blue lights on their Suburban, ordered the defendant to turn off his car engine, and then pursued him when he refused to submit and drove off instead. The constitutionality of that seizure, therefore, becomes an issue because the cocaine represents the fruits of that seizure.

-10-

One well-recognized exception to the warrant requirement exists when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. *See Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 1880 (1968); *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997); *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002), *perm. app. denied* (Tenn. 2003). Probable cause is not required for such an Ainvestigatory stop.@ *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The leading case, *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401 (1979), established that generally the police are entitled to stop a car briefly for investigative purposes if they have a reasonable suspicion, based upon specific and articulable facts, that an offense is being or is about to be committed. A reviewing court then must take into account the totality of circumstances when analyzing whether an officer's suspicion is Areasonable@ and supported by specific and articulable facts. *Yeargan*, 958 S.W.2d at 632. Circumstances relevant to that determination include, but are not limited to, the officer=s Apersonal objective observations@ and Athe rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him -- inferences and deductions that might well elude an untrained person.@ *State v. Keith*, 978 S.W.2d 861, 867 (Tenn. 1998).

Before us in these cases are transcripts of the suppression hearing and both trials. Throughout the various proceedings, the officers testified consistently about their observations of the defendant=s driving and what prompted the initiation of a traffic stop. Officer Mawyer testified at the suppression hearing that the defendant Awas driving over the center line down the

-11-

center of the road, basically weaving back and forth.@ At both trials, he said that he observed the defendant driving over the center line. Officer Tutor, likewise, testified at the suppression hearing that he observed the defendant=s vehicle weaving across the center of the road; that testimony did not change at either trial. At the suppression hearing, Officer Land related that when he first noticed the defendant=s car it was Asomewhat on the wrong side of the road,@ across the center line. Officer Land was not a witness at either trial. Finally, Investigator Thompson testified at the suppression hearing and both trials that when he first observed the defendant=s vehicle, it was Aweaving@ and Adrifting within its own lane.@ None of the officers claimed that the defendant was driving at an excessive speed. They initiated the stop to investigate the defendant=s sobriety.

The defendant did not testify at the suppression hearing but did testify at both trials. He claimed that he had not been drinking that night, that he had been visiting with a friend, and that he was simply returning home to his wife and children. The defendant testified that he noticed a vehicle traveling close behind him, but he flatly denied seeing any blue lights. He said that he was Aforced@ to stop when the other vehicle tried to cut him off the road. The defendant testified that he was frightened, that he did not know Awhat the heck was going on,@ that he did not know that the men in the other vehicle were law enforcement officers, and that he drove off Ato get some place safe.@ In the process of speeding off, the defendant said that he accelerated too fast while making a turn and Afishtailed and ended up hitting the ditch.@

-12-

According to the defendant, when the police arrived, they threw him to the ground, handcuffed him, and hit him on the side of the head. The defendant testified that one of the officers took money out of the defendant=s pants pocket. He denied that he had been drinking that night, denied having any kind of drugs with him, and denied throwing anything out his vehicle. He variously denied or could not recall having a razor blade in his pants pocket.

In its written Order denying the defendant=s suppression motion, the trial court accredited the officers= testimony that they observed the defendant weaving out of his lane and over the center. Based on this erratic driving, the trial court concluded that the officers had reasonable suspicion sufficient to justify an investigatory stop. The defendant argues on appeal that the evidence preponderates against the trial court=s findings; however, he relies entirely on Investigator Thompson=s testimony that the defendant was weaving in his own lane, which the defendant insists did not justify the stop.

Investigator Thompson=s observations notwithstanding, we are not convinced that the evidence preponderates against the lower court=s findings that the defendant was driving erratically and was weaving and drifting out of his lane and over the center of the roadway. The other officers so testified, and as the fact finder, the trial court was in the superior position to evaluate the relative merits of the testimony presented. The observations and testimony distinguish this case from those involving merely a momentary lapse in a motorist=s driving, which does not support reasonable suspicion for an investigatory stop. *Compare State v. Binette*,

33 S.W.3d 215, 218 (Tenn. 2000) (defendant≐s alleged weaving was entirely within his lane, was not exaggerated, and touched center line only twice), *and State v. Ann Elizabeth Martin*, No. E1999-01361-CCA-R3-CD, slip op. at 6-7 (Tenn. Crim. App., Knoxville, Sept. 8, 2000) (reasonable suspicion did not support stop; not unusual for vehicle to enter turn lane and then return to travel lane without making a turn), *with State v. Joe Charles Degrafenreid*, No. W2002-00681-CCA-R3-CD, slip op. at 4-5 (Tenn. Crim. App., Jackson, Apr. 23, 2003) (deputy≐s testimony described type of pronounced, erratic driving that may constitute reasonable suspicion for traffic stop), *State v. Gary S. Greve*, No. E2002-00999-CCA-R3-CD, slip op. at 3-4 (Tenn. Crim. App., Knoxville, Mar. 27, 2003) (investigatory stop upheld when defendant≐s vehicle observed weaving in and out of its lane of travel three times in a short time span), *and State v. Jerome D. Manning*, No. M2001-03128-CCA-R3-CD (Tenn. Crim. App., Nashville, Dec. 20, 2002) (reasonable suspicion for stop when defendant≐s vehicle crossed center line twice and onto right gravel shoulder of road), *perm. app. denied* (Tenn. 2003).

Consequently, we are of the opinion that although the defendant was Αseized,≅ in the constitutional sense articulated in *Randolph*, the seizure was a permissible investigatory stop and therefore was subject to the warrant requirement.  Thus, it was not unreasonable or illegal. There being no illegal seizure, there were no Αfruits≅ to be suppressed.

**(ii)  Plain View**

-14-

Perhaps the most straightforward route to admissibility of the cocaine is via the plain view exception to the warrant requirement. The plain view exception is usually invoked in conjunction with property in open view that is situated on private premises or inside automobiles Ato which access is not otherwise available for the seizing officer.@ *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 354, 97 S. Ct. 619, 629 (1977). In those situations, the plain view exception requires proof that (a) the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen; (b) the officer had a lawful right of access to the evidence; and (c) the incriminating nature of the object was immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 2136-37 (1993); *Horton v. California*, 496 U.S. 128, 136-141, 110 S. Ct. 2301, 2308-2310 (1990). In the majority of cases, the pivotal issue is whether the officer was lawfully in a position to view the object.

This case, however, presents the purest form of Aplain view.@ As recognized by the Supreme Court in *Payton v. New York*, 445 U.S. 573, 586-87, 100 S. Ct. 1371, 1380-81 (1980),

> [O]bjects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.

-15-

In our opinion, it is obvious from the record in this case that Beech Bluff Cemetery Road is a public place freely accessible to citizens and law enforcement officers alike and that the cocaine in this case was found on the side of that public road. Cocaine is contraband that generates probable cause to associate it with criminal activity. Seizing the cocaine in this case, which was in plain view in a public place, violated no constitutional imperative.

### (iii)  Abandoned Property

In its order denying suppression, the trial court spoke of the bag of cocaine as having been Aabandoned@ by the defendant, although there was no direct evidence that he had discarded the cocaine later found on Beech Bluff Cemetery Road. The difference between seizing contraband found in a public place and seizing evidence that a defendant has Aabandoned@ can be constitutionally significant. For that reason, we now turn our attention to the admissibility of the cocaine under the theory that it had been abandoned by the defendant.

The trial court ruled that the cocaine was admissible simply because the defendant lost or relinquished any possessory or ownership interest in the bag when he threw it out of the car window. This view, however, is incorrect. A defendant=s property interest does not determine the reach of the constitutional protections against unreasonable searches and seizures.

-16-

The idea that property interests control the right of officials to search and seize has been discredited. *See Oliver v. United States*, 466 U.S. 170, 183, 104 S. Ct. 1735, 1743 (1984); *Katz v. United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 512 (1967). The Fourth Amendment protects people and privacy, not places and property. *See Katz,* 389 U.S. at 351, 88 S. Ct. at 511. Consequently, Aabandonment,@ as understood in the constitutional context of unreasonable searches and seizures, Ais not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.@ *United States v. Veatch*, 674 F.2d 1217, 1220-21 (9th Cir. 1981), *quoted with approval in Ross*, 49 S.W.3d at 842 n.8.

At first blush, it might seem frivolous to discuss a reasonable expectation of privacy in a bag tossed out of a vehicle onto a public roadway. The discussion, however, is no more frivolous than the lengthy analysis by the Supreme Court in *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625 (1988), when it considered whether the defendants had a reasonable expectation of privacy in plastic garbage bags left at the curb outside their residence, or the detailed examination by the court in *State v. Bell*, 832 S.W.2d 583 (Tenn. Crim. App. 1991), whether the defendant had a reasonable expectation of privacy in a garbage dumpster located in the parking lot of a business. The analysis derives from the now-classic principle: AWhat a person knowingly exposes to the public, even in his own home or office, is not a subject of

Fourth Amendment protection. . . . *But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.*@ *Katz*, 389 U.S. at 351, 88 S. Ct. at 511 (emphasis added) (citation omitted); *see State v. Prier*, 725 S.W.2d 667, 671 (Tenn. 1987) (Tennessee affords no greater protection than *Katz=*s principle of what a person knowingly exposes to the public). Public accessibility, in other words, does not invariably defeat a reasonable expectation of privacy. *Compare Bolen v. State*, 544 S.W.2d 918, 920 (Tenn. Crim. App. 1976) (insufficient record to Ajustify treating the trash dumpster as the receptacle of abandoned property then beyond the scope of any expectation of privacy@), *with Bell*, 832 S.W.2d at 591 (garbage dumpster located on parking lot of business; doors to dumpster were open; many strangers visited establishment daily and had easy access to dumpster).

In *State v. Brenda Hill*, No. 274 (Tenn. Crim. App., Knoxville, Aug. 7, 1990), the court identified the Acritical inquiry@ as being whether the person Ahad ≥voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.≒@ *Id*., slip op. at 7 (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)). One aspect of voluntariness pointed out in *Hill* relates to Athe conduct of the officers prior to the discarding.@ *Id*., slip op. at 4. That is, A[a] defendant=s abandonment of evidence must be truly voluntary and not be the result of police misconduct.@ *Id*.

-18-

Assuming, as the trial court did, that the defendant was the person who discarded the bag along Beech Bluff Cemetery Road, the defendant≡s intent to abandon the contraband is obvious. Moreover, as we previously explained, the police actions were clearly proper, justified, and constitutional. The officers had reasonable suspicion to initiate an investigatory stop. When the defendant momentarily stopped but then failed to yield, the officers had probable cause to pursue the fleeing vehicle and arrest the defendant for evading arrest, as ultimately occurred in this case. When he voluntarily abandoned the cocaine by tossing it onto a public thoroughfare, the defendant relinquished any legitimate expectation of privacy in the contents of the bag. For this additional reason, the cocaine was properly admitted.

## B. Search Incident to Arrest

The admissibility of the razor blade seized from the defendant≡s pants pocket need not detain us long. Neither the defendant nor the state makes specific mention of this item of evidence. The trial court ruled that the razor blade was properly seized incident to the defendant≡s arrest. We agree.

One of the well-recognized exceptions to the warrant requirement is a search incident to a lawful custodial arrest. *See, e.g., State v. Walker*, 12 S.W.3d 460, 467 (Tenn. 2000). The key is the lawfulness of the underlying arrest. Pursuant to the exception, when an officer places a citizen under lawful custodial arrest, that officer is permitted to make a

warrantless search incident to the custodial arrest. *See United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477 (1973); *Walker*, 12 S.W.3d at 467; *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999). If, however, an individual is unlawfully placed under custodial arrest, a subsequent search is also unlawful, and evidence seized as a result of the unlawful search is suppressed and not admissible in the prosecution's case-in-chief. *See State v. Clark*, 844 S.W.2d 597, 600 (Tenn. 1992).

As we have explained, based on the defendant=s erratic driving, the officers had reasonable suspicion to initiate a traffic stop. Then, when the defendant momentarily stopped but refused to turn off his car engine and fled, the officers had probable cause to arrest the defendant for Class E felony evading arrest, which proscribes as unlawful Afor any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.@ Tenn. Code Ann. ' 39-16-603(b)(1), (3) (1997). When the officers eventually apprehended the defendant, they took him into custody, handcuffed him, and then searched his clothing. At that point, the razor blade was discovered in the defendant=s pants pocket. In our opinion, this is a classic example of a permissible warrantless search incident to arrest.

**II. Opinion Testimony**

Next, the defendant complains about the trial court=s admission of testimony by Officers Mawyer and Tutor and by Investigator Thompson concerning the street value of cocaine, the amount of cocaine recovered, and the money in the defendant=s vehicle as indicative of drug dealing.

The admissibility, relevancy, and competency of evidence are matters entrusted to the sound discretion of the trial court. With that principle in mind, we review the trial court=s evidentiary rulings for abuse of discretion. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Gray*, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997).

Testimony about the amount of cocaine seized and the amount of money found in the defendant=s vehicle was Afactual@ in nature and clearly not objectionable. Testimony relative to the Astreet value@ of illegal substances is commonplace in drug prosecutions. *See, e.g.*, *State v. Blackmon*, 78 S.W.3d 322, 328 n.2 (Tenn. Crim. App. 2001) (ATestimony established that the street value of one kilo (2.2 pounds) of cocaine in the Nashville area in 1993 was between $23,000 and $28,500 and ≻as high as $30,000,= depending upon availability.@); *State v. Thomas*, 818 S.W.2d 350, 354 (Tenn. Crim. App. 1991) (cocaine seized by officers had estimated street value of between $100,000 and $120,000); *State v. Jones*, 802 S.W.2d 221, 222 (Tenn. Crim. App. 1990) (small rocks of cocaine had an estimated street value of $20 each).

Moreover, in *State v. Matthews*, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990), the court held that the street value of cocaine is admissible to establish the intent of the accused. *See generally* Tenn. Code Ann. ' 39-17-417 (a)(4) (Supp. 2002) (AIt is an offense for a defendant to knowingly: . . . (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.@). Proof of monetary value is relevant to a defendant=s intent and whether he possessed the controlled substance with intent to distribute it or with intent to use it personally. *Matthews*, 805 S.W.2d at 782.

As for the significance of the amount of cocaine confiscated in this case and of the money, in small denominations, found in the car, a jury in this state, by statute, may Ainfer[ ] from the amount of a controlled substance or substances possessed by an offender, *along with other relevant facts surrounding the arrest*, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing.@ Tenn. Code Ann. ' 39-17-419 (Supp. 2002) (emphasis added). Relevant facts have been found, for instance, to include money in small denominations, beepers, loaded guns, the packaging of drugs in separate plastic bags, and Crown Royal bags used to hide drugs. *See State v. Timothy Tyrone Sanders*, No. M2001-02128-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Nashville, July 5, 2002), *perm. app. denied* (Tenn. 2002); *State v. Reginald T. Smith*, No. 02-C-01-9204, slip op. at 3-4 (Tenn. Crim. App., Jackson, Feb. 17, 1993). The testimony of officers about differences between users and sellers, based upon experiences in the field, also has been found appropriate. *See State v. Timothy Murrell*, No. W2001-02279-CCA-R3-CD, slip op. at 5-9 (Tenn. Crim. App., Jackson, July 2,

-22-

2003) (collecting and discussing cases and articles upholding admissibility of police testimony about the habits of drug dealers if witness is qualified through experience or other means).

The defendant, we hold, has not demonstrated that the trial court abused its discretion in admitting the testimony.

### III. Evidence Sufficiency

Last, the defendant contests the legal sufficiency of the evidence to support his evading arrest and cocaine possession convictions.[2]

A jury=s determination of guilt beyond a reasonable doubt removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt whereby, on appeal, a convicted defendant has the burden of demonstrating that the evidence is legally insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In reviewing the sufficiency of the evidence, we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor is it our duty to revisit witness credibility issues on appeal; that task is properly assigned to the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999). The bar that the defendant must clear on appeal is formidable. The defendant must establish that the evidence introduced at trial was so deficient that *no reasonable*

---

[2] He has not raised on appeal evidentiary sufficiency for the paraphernalia possession conviction.

-23-

trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Furthermore, as part of our review, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). These principles apply to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *Matthews*, 805 S.W.2d at 779.

### A. Evading Arrest

Class E felony evading arrest is defined as follows:

(b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.

(2) It is a defense to prosecution under this subsection that the attempted arrest was unlawful.

-24-

Tenn. Code Ann. ' 39-16-603(b)(1), (2) (1997).

The defendant=s sufficiency argument is not entirely clear to us, but he appears to be claiming that he had not been arrested at the time he drove off and/or that he did not know that the men pursuing him were law enforcement officers. He directs our attention to *State v. Holbrooks*, 983 S.W.2d 697 (Tenn. Crim. App. 1998), as authority that his conviction cannot stand. *Holbrooks*, however, is totally distinguishable on two grounds. First, the court relied on *Hodari D.* to reach the conclusion that the foot chase of defendant Holbrooks was not a seizure, and therefore, the plastic bag of rock cocaine found by the pursuing officer was not the fruit of an illegal arrest or seizure. *Holbrooks*, 983 S.W.2d at 700. As we previously discussed, *Randolph* controls the constitutional analysis pursuant to Article 1, Section 7 of the Tennessee Constitution and compels a different conclusion. *Randolph*, 74 S.W.3d at 335-38.

Second, the defendant in *Holbrooks* was charged with and convicted of a mode of evading arrest that is different from the defendant=s conviction in this case. In *Holbrooks*, the defendant was charged with Class A misdemeanor evading arrest, defined in Code section 39-16-603(a)(1) and which provides in pertinent part,

(a)(1) Except as provided in subsection (b), it is unlawful for any person to intentionally flee by any means of locomotion

-25-

from anyone the person knows to be a law enforcement officer if

the person:


      (A)     Knows the officer is attempting to arrest the person;

or

      (B)     Has been arrested.


Tenn. Code Ann. ' 39-16-603 (a)(1)(A), (B) (1997). The *Holbrooks* court ruled that A[o]bviously, the defendant had not been arrested when he began running from Officer Huggins@; nor, according to the court, was the officer attempting to arrest the defendant at the time. *Holbrooks*, 983 S.W.2d at 702-03. On *that* basis, the court reversed defendant Holbrooks= misdemeanor evading arrest conviction.


Pursuant to the mode of evading arrest for which the defendant in this case stands convicted, an arrest or attempted arrest is not one of the elements of the offense. Code section 39-16-603(b)(1) speaks of a person intentionally fleeing Aafter having received any signal from such [law enforcement] officer to bring the vehicle to a stop.@ Tenn. Code Ann. ' 39-16-603(b)(1) (1997). The statutory language is straightforward and unambiguous. The defendant testified in his own defense and claimed that he did not know that the men following him were law enforcement officers, and he expressly denied that he saw any blue lights. The jury

-26-

obviously did not find the defendant to be credible, as was its prerogative, and we do not second-guess that credibility determination.

The evidence supporting the defendant=s evading arrest conviction, we hold, is legally sufficient.

### B. Controlled Substance Possession with Intent to Deliver

The theory of defense for the cocaine possession charge was that the defendant did not possess the cocaine that was later found on the Beech Bluff Cemetery roadside. As part of his testimony, the defendant denied having any drugs with him that night and denied throwing anything out of his vehicle. The officers were unanimous in their testimony that they did not see the defendant eject any item from his car. The defendant argues that the circumstantial evidence is insufficient to support his conviction.

The defendant's appellate challenge to the sufficiency of the convicting evidence calls into play the rules concerning the use of circumstantial evidence. Unquestionably, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); *State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); *State v. Lequire*, 634 S.W.2d 608 (Tenn. Crim. App. 1982). Before, however, an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and

-27-

circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971); *Jones*, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Crawford*, 225 Tenn. at 484, 470 S.W.2d at 613.

To convict the defendant, the state was required to prove (1) knowing (2) possession of cocaine (3) with intent to deliver. Tenn. Code Ann. § 39-17-417(a)(4) (Supp. 2002). Our review of the record leads us to the conclusion that the circumstantial evidence in this case cannot withstand a legal sufficiency challenge.

The state directs our attention to circumstances, such as the defendant's failure to submit to the officers' show of authority and escape before crashing his vehicle, his movements inside the vehicle, the location of the cocaine approximately 200 yards from the point of the initial stop, the outside of the bag being wet while the inside contents were dry, the money and other items seized from the defendant's vehicle, and the somewhat remote area where the cocaine was discovered.

To be sure, "flight and attempt to evade arrest are relevant as circumstances from which, when considered with the other facts and circumstances in evidence, a jury can properly

-28-

drawn an inference of guilt." *Sotka v. State*, 503 S.W.2d 212, 221 (Tenn. Crim. App. 1972). This inference, however, avails the state little under the particular circumstances of this case. Had cocaine been discovered in the defendant's automobile, his earlier flight logically could be indicative of a "knowing" possession of cocaine. Absent any direct evidence that the defendant ever had the cocaine in his physical custody, however, his flight is no more indicative of cocaine possession than, for example, possession of stolen goods, driving on a revoked license, or having outstanding arrest warrants. *See generally State v. Shepherd*, 862 S.W.2d 557, 565 (Tenn. Crim. App. 1992) ("The inference of guilt which may flow from flight, concealment of the body, and false statements is a general one and does not provide weight to the degree of homicide which may be involved.")*; State v. Kyger*, 787 S.W.2d 13, 29 (Tenn. Crim. App. 1989) ("'Whether the flight was by [these] defendants' required a factual determination that the defendants were actually the perpetrators before any inference could be drawn.").

Regarding the location and condition of the cocaine recovered from the roadside, the state introduced evidence that the cocaine was packaged in multiple clear plastic bags that were grouped together inside a larger plastic bag. The larger bag was not sealed. Officer Tutor testified that as the officers were backtracking along Beech Bluff Cemetery Road, toward the spot where the defendant was initially stopped, they found the cocaine "on the right-hand side of the road, probably 200 yards or so from where [they] initially stopped him." The location, Officer Tutor explained, was "pretty close to where [the officers] first lost sight of [the defendant]." According to Officer Tutor, he "noticed that the outside of the bag was wet where

-29-

it was -- it was misting rain at that point, but . . . the inside of the bag was not wet." Investigator Thompson verified that the contents of the discovered bag were dry, which indicated to him that the bag had not been on the roadside long enough for the contents to become saturated.

The location of the cocaine in relation to the area where the defendant initially stopped invokes the settled law that mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *See, e.g.*, *State v. Transou*, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996); *Dishman v. State*, 460 S.W.2d 855, 858 (Tenn. Crim. App. 1970). In our estimation, this principle has particular force in this case because the cocaine was discovered on a public roadway and not, for example, inside a residence or automobile.

The testimony concerning the dampness of the outer bag as contrasted with the dry packets of cocaine inside the bag is not helpful other than to describe the condition of the cocaine when it was found. How long, if ever, the cocaine would have had to be exposed to the rain before the inside packets became wet is unknown. The answer to that inquiry is outside the realm of common experience. Certainly, the officers were not qualified to offer some kind of "expert" opinion on that topic, and they conducted no experiments to be able to report to the jury how long it would take, under similar or identical circumstances, before the inside packets became wet. *Cf. State v. Jeffery Wayne Robertson*, No. M2001-02131-CCA-R3-CD, slip op. at 10-17 (Tenn. Crim. App., Nashville, April 17, 2003) (experiment evidence introduced using

victim's stove and pressure cooker to show that pot could withstand being on the highest setting on the stove for at least seventeen hours).

As for the cellular telephone, pager, and $278 in currency found in the defendant's vehicle, we previously discussed the admissibility of such evidence as relevant to the intent of the accused to show that the controlled substance was possessed with the purpose of selling or otherwise distributing. Those pieces of evidence, without more, do not prove that a defendant possessed illegal narcotics in the first instance; rather, their usefulness to the state is, so to speak, "called into play" when the controverted issue becomes simple possession for personal use versus an illegal product intended to be marketed.

We recognize that the defendant's trial testimony may have raised some credibility issues and that the jury may have believed that, if the defendant were untruthful about issues such as, for instance, the origin of the razor blade found in his pocket, then he was likely untruthful about discarding the bags of cocaine. Although a jury is free to reject a defendant's testimony, "disbelief of the defendant is not sufficient grounds upon which to base an inference of . . . an essential element of the crime which the state must prove beyond a reasonable doubt." *State v. William Earl Ramsey*, No. 03C01-9203-CR-00070, slip op. at 6 (Tenn. Crim. App., Knoxville, May 13, 1993) (citing *State v West*, 844 S.W.2d 144, 148 (Tenn. 1992) ("Although the jury is permitted to disbelieve the defendant's testimony, it may not construct a theory based on no evidence at all.")); *see United States v. Tyler*, 758 F.2d 66, n.3 (2d Cir. 1985) ("When the

-31-

testimony of a witness is not believed, the trier of fact may simply disregard it. Normally, the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion.") (quoting *Bose Corp. v. Consumers Union*, 466 U.S. 485, 513, 104 S. Ct. 1949, 1966 (1984)). Thus, we have not taken into account the improbability of the defendant's testimony in analyzing the sufficiency of the evidence that he possessed cocaine.

Having carefully reviewed the record, we believe that the state's evidence in this case, at best, proved that cocaine was discovered along a public roadside where the defendant had recently driven. The evidence did not weave the requisite web of guilt around the defendant so as to exclude every other reasonable hypothesis except guilt. Accordingly, the defendant's conviction for possession of cocaine with intent to deliver must be reversed.

## IV. Conclusion

Based on the foregoing and the record as a whole, we affirm the conviction of evading arrest, and we reverse the conviction of possession of cocaine and dismiss that charge.

_____

JAMES CURWOOD WITT, JR., JUDGE

-32-