

## NUMBER 13-09-280-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI ‑ EDINBURG

**MIGUEL BALDERAS,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

### On appeal from the 404th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela
Memorandum Opinion by Justice Vela**

A jury found appellant, Miguel Balderas, guilty of the murder of Enrique Velez. *See* Tex. Penal Code Ann. § 19.02(b)(1), (2) (Vernon 2003). The trial court assessed punishment at fifty years' imprisonment. Appellant raises eight issues for our consideration. We affirm.

## I. Factual Background

About 7:20 a.m. on April 20, 2003, Brownsville police received a call regarding a "subject down" on Midway Drive. When Officer Gilbert Gonzalez arrived at the scene, he saw Enrique Velez, laying face down on the side of the street. Velez had head trauma[1] and no pulse. When Officer Jesus Vallejo arrived, he saw that Velez was not wearing any jewelry or rings. A witness, Maria Lucio, who lived on Midway Drive, recalled seeing a gray van with a yellow stripe leaving the scene prior to the time the police found Velez's body.

The investigation into the events surrounding Velez's murder revealed that in the late evening of April 19, 2003, Roberto Rivera saw Velez and appellant at a pool hall in Brownsville. The following morning, between 12:30 and 1:00, two other witnesses saw appellant and Velez at the same pool hall. Velez, who was wearing "bulky jewelry," left the pool hall with appellant in a van between 1:45 a.m. and 2:00 a.m. Between 3:00 and 3:20 that morning, Rivera stopped at Velez's house to visit him. Rivera saw a "greyish van" parked there. He testified that appellant was at Velez's home, talking on the phone.

About 4:30 that morning, Velez was outside his house, and a grayish van with a yellow stripe was parked there. By 5:00 that morning, the van was gone.

Juan Sosa testified that between 7:00 and 7:30 that morning, he was at home when appellant came to his house and told him that "he had had some kind of an argument with somebody . . . but that it didn't amount to much. . . ." Arturo Marroquin testified that in the afternoon of April 20, 2003, appellant sold him a ring. Afterwards, appellant offered to sell him some gold-colored chains. Marroquin did not buy the chains, and appellant told him

---

[1] Lawrence Dahm, M.D., a pathologist, testified that Velez suffered "at least nine separate injuries or blows" to the head. He stated that the cause of death was homicide "due to the multiple traumatic injuries to the head. . . ."

2

that he had a van and asked Marroquin if he was interested in exchanging it for Marroquin's pickup. Marroquin refused the offer. Later, Marroquin gave the ring that he bought from appellant to Officer Vallejo. Velez's daughter identified the ring that Marroquin bought from appellant as Velez's ring. She testified that her father would never have sold the ring or given it away.

At 1:18 a.m. on April 21, 2003, Brownsville police received a call about a burning van at Fourth and East Jefferson. When Officer Billy Killibrew arrived at the scene, he saw a van engulfed in flames. Officer Vallejo testified that the van was registered to a Margarita Vasquez Soto, who is appellant's cousin. Officer Manuel Lucio searched the van and recovered a yellow shirt and a striped shirt from inside the van.

Ben Nunez, a certified fire-and-arson investigator, examined the burned van and testified that in his opinion the fire was intentionally started and that gasoline was used as an accelerant. He testified that people can receive injuries when starting fires with gasoline because of its explosive nature.

Sergio Leal testified that on April 19, 2003, he was in Brownsville at his brother's mechanic's shop when appellant arrived, driving a van that was pulling a trailer. His brother let appellant leave the trailer at the shop. Sergio testified that the van's color was "kind of grayish, bluish. . . ." About two weeks later, appellant returned to the shop, driving a car that he used to pick up the trailer. When the prosecutor asked Sergio, "And did you-all discuss where he [appellant] had been or why he hadn't picked up his trailer already?", he said that appellant "claimed that he had gotten, . . . in a disagreement with somebody" and "that somebody tried to burn him. . . ." Sergio saw "some burns" on one of appellant's arms.

3

Crystal Anderson, a forensic scientist, found an apparent blood stain on each of the two shirts recovered from the burned van. She performed two DNA tests on each stain and testified that the first DNA test on each stain showed that "Enrique Velez cannot be excluded as a contributor" to the DNA found in each stain. Her second DNA test showed that the DNA profiles obtained from each stain are "consistent with the DNA profile of the victim." She further testified the DNA profile obtained from a second stain on the yellow shirt "is consistent with the DNA profile of the victim. The victim cannot be excluded as a contributor of the stain. . . ."

The defense did not call any witnesses to testify at the guilt-innocence phase.

## II. DISCUSSION

### A. Charge Error

We address issue two first wherein appellant argues the trial court erred by failing to instruct the jury on the issue of "extraneous offense." During the charge conference, defense counsel requested this instruction,[2] which the trial court denied.

We analyze charge error according to the two-step test announced in *Almanza v. State*, 686 S.W.2d 157, 171-74 (Tex. Crim. App. 1985) (op. on reh'g). First, we determine whether error exists in the charge. Next, if error exists, we determine whether appellant was harmed sufficiently to require reversal. *Id*.

Even if we assume the trial court erred by failing to instruct the jury, appellant does not address the question of whether the alleged error in failing to include such instruction was harmful. Texas Rule of Appellate Procedure 38.1(i) provides that "[t]he brief must

---

[2]During the charge conference following the guilt-innocence phase, defense counsel requested an instruction "regarding extraneous acts, extraneous offenses that were in this case. We ask the Court to charge the jury that they'd first have to find that the Defendant committed those acts beyond a reasonable doubt, specifically regarding the burning of the van, . . . ."

4

contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Accordingly, appellant has inadequately briefed this issue by failing to present argument and authorities as required by rule 38.1(i). *See Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (stating that appellant who did not address the question of whether the alleged error by the trial court in failing to include a jury instruction regarding the voluntariness of his statement to police was harmless constituted inadequate briefing under rule 38.1(i) and waived the issue for appellate review); *see also Ladd v. State*, 3 S.W.3d 547, 575 (Tex. Crim. App. 1999) (holding that requiring capital appellants to abide by the briefing rules does not offend due process). Issue two is overruled.

## B. Motion To Suppress

In issue three, appellant argues the trial court erred by failing to suppress the evidence seized pursuant to a warrantless search of the burned van.

### 1. Suppression Hearing

Appellant filed a motion to suppress the evidence seized from the burned van as the product of an unlawful, warrantless search. At the pretrial suppression hearing, the defense called two witnesses, Officer Vallejo and Investigator Nunez.

Officer Vallejo testified that at 4:30 a.m. on April 20, 2003, two witnesses "placed the victim [Enrique Velez] . . . with the subject in a van." Officer Vallejo stated that about 4:45 that morning, Velez's uncle saw a gray van at Velez's house and that "a male" was "out there with the van[.]" Velez's "compadre" described the van as gray with a blue stripe. At 6:45 that morning, a citizen called the police regarding the discovery of Velez's body on Midway Drive. Maria Lucio told police she saw a gray van with a yellow stripe, speeding away from where the body was found. At 2:30 a.m. on April 21, 2003, Brownsville police

received a call about a burning van parked on a street. The van was registered to appellant's cousin, Margarita Vasquez Soto, who sold it to appellant in early April 2003. Officer Vallejo stated that police could not locate appellant, and appellant did not contact the police "and assert that this was his van." When defense counsel asked Officer Vallejo, "To your knowledge, did anybody see anybody . . . start the van on fire?," he said, "No . . . but the Defendant, as per various witnesses, sustained burns." Officer Vallejo testified that Detective Manuel Lucio conducted a warrantless search of the van on May 19, 2003.

Investigator Nunez testified that he investigated the cause and origin of the fire to the van while it was parked in a salvage yard. Without a warrant, he searched the van's interior and recovered "a baseball bat and several shirts that appeared to have what appeared to be blood on them." Investigator Nunez also took some carpeting and padding from the van as well as some samples from behind the van's driver's seat. He submitted these items to the arson investigation lab in Austin. Investigator Nunez saw "three significant depressions" on the particle board towards the rear of the van's cargo area. He said this "appeared to be based on pour patterns, as if somebody had taken a flammable liquid and doused this area." He stated that the "lab results did pick up traces of gasoline inside the samples that I submitted. . . ." Investigator Nunez concluded that the "fire was of an incendiary nature" and that "it was intentionally set [on] fire." He stated that he was the only person who searched the van's interior for evidence.

After hearing closing arguments, the trial judge denied the motion to suppress and stated in her findings of fact and conclusions of law[3] that her denial of the motion was

---

[3]The trial judge made oral findings of fact and conclusions of law as follows:

The Court finds that it was a crime scene. That finding of a burning van, for the protection of the public safety, the officers had a duty to one, extinguish the van, call the fire marshall, and had a duty to investigate for the protection of your client [appellant], the owner of the

6

based on the "crime scene" exception to the warrant requirement.

## 2. Standard of Review

In *St. George v. State*, the court of criminal appeals stated:

Whether a specific search or seizure was reasonable is a mixed question of law and fact and is conducted de novo. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. We do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony. Trial courts are given almost complete deference in determining historical facts. We review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case.

237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citations omitted).

We are obligated to uphold the trial court's ruling on appellant's motion to suppress if the record supported the ruling and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). "That rule holds true even if the trial court gave the wrong reason for its ruling." *Id*. Our task is to determine whether the trial court could have reasonably denied appellant's motion to suppress, given the evidence and given the applicable law. *See id*.

## 3. Applicable Law & Analysis

"[T]he State's intrusion into a particular area, whether in an automobile or elsewhere, cannot result in a Fourth Amendment violation unless the area is one in which there is a constitutionally protected reasonable expectation of privacy." *New York v. Class*,

---

vehicle, to try to preserve evidence for him as a victim as to who would have set his van on fire, number one; number two, if he set the fire himself, to also try to find out what motive or causation he would have had, but there was no warrant required given the fact that it was a crime scene going on.

With regard to the items that were discovered in the van, they had a duty to find out what stains were found on the shirts and what stains were found on the carpet to determine in furtherance of an investigation of a crime scene, and once it was tied to a possibility of a match to the victim in the murder case, then it ties it to this case.

475 U.S. 106, 112 (1986) (internal quotation marks omitted). Thus, a defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). When an accused voluntarily abandons property, he lacks standing to contest the reasonableness of the search of the abandoned property. *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997). Only after an accused has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *Kothe*, 152 S.W.3d at 59. An appellate court may raise the standing issue on its own,[4] and we review the legal issue of standing de novo. *Id*. at 59-60.

In *McDuff*, the court of criminal appeals explained:

> Abandonment of property occurs if the defendant intended to abandon the property and his decision to abandon it was not due to police misconduct. When police take possession of property abandoned independent of police misconduct there is no seizure under the Fourth Amendment. This Court has spoken approvingly of language in *U.S. v. Colbert*, 474 F.2d 174 (5th Cir. 1973) (en banc), which discussed how abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances, with the issue not being in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*McDuff*, 939 S.W.2d at 616 (internal citations omitted).

In this case, the evidence showed that at 2:30 a.m. on April 21, 2003, appellant's van was found on fire and parked on a street. Officer Vallejo testified that the van was not searched until May 19, 2003. The police could not locate appellant, and he never contacted the police about his van. No keys were found in the van, and the evidence does

---

[4]*Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004).

8

not show that anyone including appellant reported the van as being stolen. Furthermore, less than twenty-four hours before police found appellant's burning van, a van was seen speeding away from the area where Velez's body was found. Even though the police did not know who set appellant's van on fire, Officer Vallejo testified that appellant "as per various witnesses, sustained burns." Accordingly, there is sufficient evidence of abandonment, i.e., that appellant intended to abandon his van and his decision to abandon it was not due to police misconduct. Therefore, appellant does not have standing to challenge the search because he did not retain a reasonable expectation of privacy with regard to the van at the time of the search. *See id.* We hold that the trial court did not err by denying appellant's motion to suppress. Issue three is overruled.

## C. Admission Of Photographs

In issue four, appellant argues the trial court erred in admitting, over timely objection, photographs of the interior and exterior of his burned van. Specifically, he argues that the trial court should have excluded the photos under Texas Rule of Evidence 403.

Rule 403 allows the trial court to exclude evidence if the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. A proper rule 403 analysis "includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; (4) the proponent's need for the evidence." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). In the context of the admission of photographs into evidence, we also consider factors including "the number of photographs,

9

the size, whether they are in color or are black and white, whether they are gruesome, whether any bodies are clothed or naked, and whether the body had been altered by autopsy." *Id*. We review the trial court's decision to admit or exclude photographs under an abuse-of-discretion standard. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

The State introduced fifty-two, four-inch by six-inch color photos, showing various aspects of the van's interior and exterior as well as some of the carpeting and other material removed from the van. The photos are not gruesome and do not impress the jury in some irrational, yet indelible, way. The time needed to introduce the photos and have the witnesses (Officer Killibrew and Investigator Nunez) explain them was short in comparison to the time the State spent in developing the remainder of the evidence. The State's need for the photos is significant because they showed the jury the extent of the fire damage and this helped Investigator Nunez to support his conclusion that the fire was intentionally set. Thus, the probative value of the photos is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *See* Tex. R. Evid. 403. We hold that the trial court did not abuse its discretion by admitting the photographs into evidence. Issue four is overruled.

## D. Use Of The Van As Part Of The Crime Scene

In issue five, appellant argues "[t]he trial court erred in allowing the State to present evidence of Appellant's use of the van as a scene of the murder." Appellant's argument contains no citations to the record or reference to any specific evidence found in the record. An "[a]ppellant must direct the court to the specific portion of the record supporting the alleged error." *Jensen v. State*, 66 S.W.3d 528, 545 (Tex. App.–Houston [14th Dist.]

10

2002, pet. ref'd). Because appellant's argument on this issue contains no citations to the record and no citation to authorities, he has waived appellate review of his complaint. *See* TEX. R. APP. P. 38.1(i); *see also Cardenas,* 30 S.W.3d at 393 (holding that appellant who inadequately briefed points by neglecting to provide argument and authorities as required by rule 38.1(i) waives the complaint on appeal). Issue five is overruled.

**E. Admission Of Evidence In Violation Of The Right To Cross-Examine Witnesses**

In issue six, appellant argues the trial court erred in allowing evidence to be offered from a witness in violation of his right of cross-examination. Appellant's argument contains no citations to authorities and no citations to the record or reference to any specific instance where the trial court denied him the right to cross-examine any witness. Failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal. *See Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App. 2004); *see also Cardenas*, 30 S.W.3d at 393. Issue six is overruled.

**F. Closing Argument**

In issue seven, appellant argues the State's closing argument violated his right to a fair trial. During the guilt-innocence phase, the State made the following remarks during its closing argument[5] to the jury:

> You heard people discussing [appellant's] burns. I don't know if they were third degree, if they were somewhat minor, but there were burns. There were burns. *I can't tell you where he [appellant] was for three-and-a-half years, okay. People heal in three-and-a-half years*.
>
> . . . .
>
> You can put him [appellant] with the jewelry. He takes it, and he goes. Where does he go? *He's looking for help from family*.

---

[5]We have italicized those portions of the arguments that appellant calls to our attention.

11

Appellant argues that the italicized remarks show that the State was (1) making reference to evidence outside the record and (2) commenting on his failure to testify or offer evidence. The approved general areas of argument are summation of the evidence, reasonable deduction from the evidence, answer to opposing counsel's argument, and plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Neither the trial judge nor the prosecution may comment on the defendant's failure to testify, and any comment thereon violates the Fifth Amendment privilege against self-incrimination.[6] *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (citing *Griffin v. California*, 380 U.S. 609, 614 (1965)), *see* TEX. CODE CRIM. PROC. ANN. art. 38.08. To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. *Cruz*, 225 S.W.3d at 548. It is not sufficient that the language might be construed as either an implied or indirect allusion. *Id*. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Id*. "In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character." *Id*. (citing *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001)).

In this case, defense counsel did not object to the complained-of remarks. To preserve error on appeal for improper jury argument, the defendant must object to the comment and pursue the objection until the trial court rules adversely. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Because no objections were lodged against the complained-of remarks, any error is not preserved for appellate review. *See id*.

[6]*See* U.S. CONST. amend. V; TEX. CONST. art 1, § 10.

Nevertheless, viewing the complained-of remarks from the jury's standpoint, we do not believe the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on appellant's failure to testify or offer evidence. Issue seven is overruled.

## G. Motion for New Trial

In issue eight, appellant contends the trial court erred by denying his motion for new trial because the trial court failed to properly instruct the jury on the issue of extraneous offenses. Defense counsel filed a motion for new trial, alleging that the trial court, "over the request[7] of defense counsel, [failed] to instruct the jury that they were not to consider the burning of the . . . [van] unless they believed beyond a reasonable doubt that [appellant] committed said offense." Following a hearing,[8] the trial court overruled the motion for new trial.

We review the trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court; rather, we decide whether its decision was arbitrary or unreasonable. *Id*. We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that party. *Id*. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id*.

---

[7]As stated in issue two, the trial court denied appellant's requested instruction relating to extraneous offenses.

[8]Neither the State nor the defense presented any evidence or testimony at the hearing on the motion for new trial.

13

The State argues that the burning of the van constituted "same transaction contextual evidence," and therefore, no instruction was necessary. "Same-transaction contextual evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case incomplete or difficult to understand." *Prible v. State*, 175 S.W.3d 724, 732 (Tex. Crim. App. 2005). A trial court may admit "extraneous-offense evidence . . . as same-transaction contextual evidence, where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction." *Id.* at 731-32 (internal quotation marks omitted). "Such extraneous offenses are admissible to show the context in which the criminal act occurred." *Wesbrook*, 29 S.W.3d at 115. "This evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Id*. "When this evidence of extraneous offenses is used to prove a main fact in the case, an instruction limiting the jury's consideration of this evidence is generally not required." *Id*.

Here, the evidence showed that shortly before Velez's body was found, he and appellant were seen leaving the pool hall together in a van. Another witness saw a gray van, speeding away from the location where Velez's body was found. Early the next morning, appellant's van was found on fire, and two shirts recovered from the van contained DNA consistent with Velez's DNA. Investigator Nunez testified that the fire to the van was started by gasoline and that people can receive injuries when starting fires with gasoline. Sergio Leal testified that the evening before Velez's murder, appellant was driving a van and that two weeks later, appellant was driving a car and that he saw "some burns" on one of appellant's arms. This evidence supports a finding by the trial court that

14

appellant set fire to his van in an attempt to destroy evidence linking him to Velez's murder. The extraneous matter of the van being set on fire is so intertwined with the State's proof of the charged offense that avoiding reference to it would make the State's case incomplete or difficult to understand. *Id*. at 732. Therefore, the extraneous offense of the burning of the van is admissible as same transaction contextual evidence. Accordingly, we hold that the trial court did not abuse its discretion by denying appellant's motion for new trial. Issue eight is overruled.

## H. Ineffective Assistance Of Counsel

In issue one, appellant argues he received ineffective assistance of counsel.

## 1. Standard Of Review

*Strickland v. Washington* defines the components required to show ineffective assistance of counsel. 466 U.S. 668, 687 (1984). The two required components are a performance component and a prejudice component. *Id*. First, the defendant must show that counsel's performance was deficient, which requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy this prong of the analysis, the defendant "must show that counsel's representation fell below an objective standard of reasonableness" based upon "prevailing professional norms." *Strickland*, 466 U.S. at 688. For this performance inquiry, we consider all the circumstances with "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 688-89.

Second, the defendant must show that counsel's deficient performance prejudiced the defense. *Perez*, 310 S.W.3d at 893. This requires the defendant to show that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose

result is reliable." *Id*. (citing *Strickland*, 466 U.S. at 687). To satisfy this element, the "'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). The defendant has the burden of proving ineffectiveness by a preponderance of the evidence. *Id*. (citing *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005)).

**2. Analysis**

First, appellant states that trial counsel was ineffective because he "fail[ed] to adequately protect Appellant's rights by insisting on discovery requests." However, appellant does not state what discovery requests trial counsel failed to insist upon. Furthermore, even assuming trial counsel was deficient for failing to insist upon discovery requests, appellant has not shown "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 694).

Second, appellant argues trial counsel was ineffective because "he fail[ed] to object to the introduction of evidence in violation of Appellant's Fourth Amendment rights." *See* U.S. CONST. amend. IV. Appellant complains that counsel did not properly object to State's exhibits 1, 2, 3A, 3B, and 12-49, which are photos of the burned van. However, even if we assume that trial counsel did not properly object to these exhibits, appellant has failed to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Perez*, 310 S.W.3d at 893 (quoting *Strickland*, 466 U.S. at 694).

Third, appellant complains trial counsel was ineffective because he "fail[ed] to object to hearsay testimonial statements by the pathologist." However, because appellant's

argument contains no citations to the record, he has waived appellate review of his complaint. *See* Tex. R. App. P. 38.1(i); *Jensen*, 66 S.W.3d at 543.

Fourth, appellant complains trial counsel was ineffective because he "open[ed] the door to the admission of similar extraneous offense and other 'bad acts' evidence during the guilt/innocence phase thereby destroying the credibility of Appellant and prejudicing his defense[.]" Appellant has failed to direct our attention to any location in the record where trial counsel allegedly opened the door to any extraneous offenses or bad acts. Because appellant's argument regarding this complaint contains no citations to the record, he has waived appellate review of his complaint. *See* Tex. R. App. P. 38.1(i); *Jensen*, 66 S.W.3d at 543.

Lastly, appellant argues trial counsel was ineffective because he "fail[ed] to object to hearsay improper statements." Because appellant's argument regarding this complaint contains no citations to the record where counsel allegedly failed to object to hearsay, he has waived appellate review of this complaint. *See* Tex. R. App. P. 38.1(i); *Jensen*, 66 S.W.3d at 543. Issue one is overruled.

### III. Conclusion

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
9th day of December, 2010.

17